[Cite as *State ex rel. Gibbs v. Thistledown, Inc.*, 2014-Ohio-2731.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State of Ohio ex rel. Elizabeth Gibbs, | : | |
| Relator, | : | |
| v. | : | No. 13AP-487 |
| Thistledown, Inc. and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on June 24, 2014

*The Friedman Law Firm*, *Yisroel Goldstein*, **and** *Zeev Friedman*, **for relator.**

*Jackson Lewis P.C.*, *Ryan J. Morley*, **and** *Michelle T. Hackim*, **for respondent Thistledown, Inc.**

*Michael DeWine*, **Attorney General, and** *Kevin J. Reis*, **for respondent Industrial Commission of Ohio.**

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

SADLER, P.J.

{¶ 1} In this original action, relator, Elizabeth Gibbs, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied her application for permanent total disability ("PTD") compensation and to enter an order granting the compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate concluded that

the commission did not abuse its discretion in determining that relator unjustifiably refused vocational rehabilitation services and that such refusal is a factor weighing against an award of PTD compensation. Accordingly, the magistrate concluded that the commission's determination regarding relator's unjustified refusal of vocational rehabilitation services is supported by some evidence and recommended that this court deny the request for a writ of mandamus.

## I. RELATOR'S OBJECTIONS

{¶ 3} Relator presents the following amended objections to the magistrate's decision:[1]

> [I.] [T]he Magistrate found that the Industrial Commission had "some evidence" to rely upon in denying Relator's Permanent Total disability application even though he determined that the Industrial Commission incorrectly interpreted the evidence.
>
> [II.] [T]he Magistrate ignored a significant error in the Industrial Commission's order with regard to Relator's request for vocational rehabilitation services and therefore the Magistrate's decision is flawed.

## II. DISCUSSION

{¶ 4} No objections have been filed to the magistrate's findings of fact. After an independent review of the same, we adopt those findings of fact as our own. For ease of discussion, we provide a brief summarization of the facts relevant to relator's objections.

{¶ 5} Relator was diagnosed as having bilateral carpal tunnel syndrome arising from her employment as a cashier with respondent, Thistledown, Inc. Relator's industrial claim for bilateral carpal tunnel syndrome was allowed in 2008. Relator's managed care organization referred her on three separate occasions, April 17, 2009, May 3, 2010, and July 17, 2010, to the Ohio Bureau of Workers' Compensation ("BWC") to participate in vocational rehabilitation. On each occasion, relator did not participate in vocational rehabilitation. Due to relator's non-participation, BWC closed the referrals and issued closure reports for each referral. While the first two closure reports indicate that

---

[1] These objections are gleaned from the first paragraph of relator's amended objections to the magistrate's decision filed with the court on March 3, 2014.

extenuating circumstances existed surrounding relator's non-participation in vocational rehabilitation, the third closure report, issued on August 24, 2010, denotes only that relator stated that she does not wish to participate in rehabilitation services at this time.

{¶ 6} Relator applied for PTD on November 22, 2011. In considering relator's PTD claim, the commission examined whether relator participated in vocational rehabilitation. The commission concluded that relator did not participate in vocational rehabilitation on three separate occasions and that such inaction demonstrated a lack of good-faith effort to pursue vocational retraining when it was available to her. In denying relator's PTD claim, the commission concluded that relator's refusal of vocational rehabilitation was one factor to be considered amongst other medical and non-medical factors under consideration.

{¶ 7} In reviewing the medical and non-medical factors relied upon by the commission, the magistrate's decision notes that the commission's decision inaccurately implies that all three file closure reports lack extenuating circumstances to justify relator's non-participation in vocational rehabilitation when, in fact, only the August 24, 2010 closure report demonstrates that relator unjustifiably refused to participate. However, because the magistrate concluded that the August 24, 2010 closure report provided some evidence to support the commission's conclusion that relator refused vocational rehabilitation services, the magistrate determined that the commission did not abuse its discretion in considering relator's unjustified refusal of vocational rehabilitation as a factor weighing against PTD. Moreover, the magistrate also recognized that the commission considered other medical and non-medical factors and did not abuse its discretion in denying relator's claim for PTD compensation.

A. Standard for Mandamus

{¶ 8} To obtain a writ of mandamus, a relator must demonstrate that it has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. AutoZone, Inc. v. Indus. Comm.*, 117 Ohio St.3d 186, 2008-Ohio-541, ¶ 14. "To show the clear legal right, relator must demonstrate that the commission abused its discretion by entering an order unsupported by some evidence in the record." *State ex rel. Hughes v. Goodyear Tire & Rubber Co.*, 26 Ohio St.3d 71, 73 (1986). When the record contains "some evidence" to support the commission's factual findings, a court

may not disturb the commission's findings in mandamus. *State ex rel. Fiber-Lite Corp. v. Indus. Comm.*, 36 Ohio St.3d 202 (1988), syllabus. " 'Where a commission order is adequately explained and based on some evidence, * * * the order will not be disturbed as manifesting an abuse of discretion.' " *State ex rel Avalon Precision Casting Co. v. Indus. Comm.,* 109 Ohio St.3d 237, 2006-Ohio-2287, ¶ 9, quoting *State ex rel. Mobley v. Indus. Comm.,* 78 Ohio St.3d 579, 584 (1997).

**B. First Objection**

{¶ 9} In her first objection, relator contends that, because the magistrate determined that the commission incorrectly interpreted the evidence to establish that relator unjustifiably refused to participate in vocational rehabilitation three times, there is a lack of evidence to establish she refused vocational rehabilitation. Specifically, relator contends that the August 24, 2010 closure report alone is insufficient to establish some evidence in support of the commission's determination that relator's refusal to participate in rehabilitation services is a factor weighing against an award of PTD compensation. We disagree.

{¶ 10} Initially, we note that relator does not challenge the other medical and non-medical factors relied upon by the commission in denying her PTD claim and, thus, we do not address them further. In addressing the issue raised by relator's first objection, the magistrate found that the August 24, 2010 closure report states that relator refused to participate in vocational services without providing extenuating circumstances to justify her non-participation and concluded said closure report constitutes some evidence establishing that relator unjustifiably refused to participate in vocational rehabilitation. Accordingly, the magistrate determined that the commission did not abuse its discretion in considering relator's refusal of vocational rehabilitation as a factor in denying her request for PTD compensation.

{¶ 11} Though relator continues to assert that there is no evidence to support the commission's conclusion that relator unjustifiably refused vocational rehabilitation, we agree with the magistrate's reasoning in determining that one unjustified refusal of vocational rehabilitation services is sufficient to establish some evidence that relator unjustifiably refused vocational rehabilitation. Accordingly, we reject relator's contentions to the contrary and find no merit to relator's objection.

{¶ 12} Accordingly, relator's first objection is overruled.

## C. Second Objection

{¶ 13} In her second objection, relator contends that both the magistrate and the commission ignored that, on May 16, 2011, relator's doctor requested that she be referred for vocational rehabilitation. Contrary to relator's assertion, both the magistrate and the commission addressed this issue. The magistrate's decision states that "[o]n May 16, 2011, Dr. Gupta completed form C-9 on which he requested, on relator's behalf, 'Vocational Rehab[ilitation] Therapy.' " (Magistrate's Decision, 4.) The magistrate's decision then dedicates the next two pages to discussing the outcome of relator's request, including the subsequent administrative appeals.

{¶ 14} Additionally, the commission's decision discusses the result of relator's doctor's request for vocational rehabilitation stating that "the Commission recognizes that the Injured Worker was denied vocational rehabilitation services by the Bureau of Workers' Compensation in 2011," but determined that relator's prior refusals of vocational rehabilitation demonstrated a lack of good-faith effort to pursue vocational retraining when it was available to her. (Dec. 11, 2012 Record of Proceedings, 2.) Thus, we find that neither the magistrate's nor the commission's decision ignored that relator's doctor requested a referral for vocational rehabilitation services on May 16, 2011.

{¶ 15} Accordingly, relator's second objection is overruled.

## III. CONCLUSION

{¶ 16} Upon review of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We, therefore, overrule relator's objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, the requested writ of mandamus is hereby denied.

*Objections overruled;*
*writ of mandamus denied.*

TYACK and BROWN, JJ., concur.

_____

**A P P E N D I X**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State of Ohio ex rel.<br>Elizabeth Gibbs, | : | |
| | : | |
| Relator, | | |
| | : | |
| v. | | No. 13AP-487 |
| | : | |
| Thistledown, Inc. and<br>Industrial Commission of Ohio, | | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

---

**M A G I S T R A T E ' S   D E C I S I O N**

**Rendered on February 11, 2014**

---

*The Friedman Law Firm, Yisroel Goldstein* and *Zeev Friedman,* for relator.

*Jackson Lewis LLP, Ryan J. Morley* and *Michelle T. Hackim,* for respondent Thistledown, Inc.

*Michael DeWine*, Attorney General, and *Justine S. Casselle,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

{¶ 17} In this original action, relator, Elizabeth Gibbs, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order of December 11, 2012 that denied permanent total disability ("PTD") compensation, and to enter an order granting the compensation.

Findings of Fact:

{¶ 18} Relator has three industrial claims arising in the course of her employment as a "mutuel clerk" for respondent Thistledown, Inc. ("employer"), a state-fund employer.

{¶ 19} 2. On July 22, 1989, relator sustained a lumbosacral strain. This injury was assigned claim No. 89-26490.

{¶ 20} 3. On March 27, 2007, relator sustained a right knee contusion. This injury was assigned claim No. 07-323940.

{¶ 21} 4. On September 3, 2008, relator was diagnosed as having "bilateral carpal tunnel syndrome." The industrial claim (No. 08-367558) was allowed for that condition in December 2008.

{¶ 22} In July 2009, relator underwent a right carpal tunnel release. In November 2009, relator underwent a left carpal tunnel release.

{¶ 23} 5. Earlier, on April 17, 2009, relator was referred for vocational rehabilitation services by her managed care organization ("MCO").

{¶ 24} 6. However, on May 7, 2009, on form RH-21, the Ohio Bureau of Workers' Compensation ("bureau") closed relator's vocational rehabilitation file. In the May 7, 2009 closure report, the vocational case manager stated:

> Ms. Gibbs is not considered a good candidate for vocational rehabilitation at this time pending surgery for bilateral carpal tunnel syndrome. She would be considered medically instable until a reasonable time for recovery after such surgery. It would be reasonable to reconsider her for vocational services at that time and exploration of work availability with her employer should the result of the surgery be favorable.

{¶ 25} 7. On May 3, 2010, relator was again referred for vocational rehabilitation services by her MCO.

{¶ 26} 8. On May 27, 2010, on form RH-21, the bureau again closed relator's vocational rehabilitation file. In the May 27, 2010 closure report, the vocational case manager stated:

> This case manager telephoned Ms. Gibbs on 5/3/10 and at that time Ms. Gibbs wanted to defer talking about vocational

services. This case manager again spoke with Ms. Gibbs on 5/10/10 and Ms. Gibbs at that time wanted to defer vocational services for 2 weeks until her therapy ended. A phone call to Ms. Gibbs was returned by Ms. Gibbs on 5/26/10. At that time Ms. Gibbs stated that she is not interested in vocational services at this time, noting that her therapy is coming to an end and that she expects to return to work sometime in July. This matter was staffed with the appropriate personnel at 1-888-OhioComp, and it was agreed that Ms. Gibbs' vocational file will be closed pre plan due to her lack of interest in vocational services.

{¶ 27} 9. On July 17, 2010, relator was again referred for vocational rehabilitation services by her MCO.

{¶ 28} 10. However, on August 24, 2010, on form RH-21, the bureau again closed relator's vocational rehabilitation file. In the August 24, 2010 closure report, the vocational case manager stated:

Ms. Gibbs' initial interview was held on 8/4/10 at a restaurant near her home. At the time of the interview Ms. Gibbs declined to sign the rehabilitation agreement and the consent to release medical information form, stating that she wanted to discuss these forms first with her legal counsel and her physician before signing them. Ms. Gibbs telephoned this case manager on 8/18/10 stating that she was going to have her signed forms faxed over to this case manager. However, the signed forms were not received, and when this case manager telephoned Ms. Gibbs on 8/20/10, she stated that she has decided that she does not want to participate in vocational services at this time. * * * [I]t was decided that Ms. Gibbs' vocational file would be closed as she is not interested in vocational services.

{¶ 29} 11. On October 1, 2010, treating physician Arun Gupta, M.D., wrote:

Ms. Gibbs is under my care for bilateral carpal tunnel, and because of her wrist pain is unable to perform any purposeful duties, at any given job.

{¶ 30} 12. On October 8, 2010, relator filed an application for PTD compensation. In support, relator submitted the October 1, 2010 report of Dr. Gupta.

{¶ 31} 13. On December 1, 2010, at the employer's request, relator was examined by Paul Freedman, M.D. In his report dated December 3, 2010, Dr. Freedman opined:

The claimant's overall function is consistent with being capable of working. She does require restrictions, but such restrictions would not at all prevent her from returning to remunerative employment. The restrictions would include avoiding frequent repetitive forceful gripping and a lifting limit of 20 lbs. These restrictions should be considered permanent.

{¶ 32} 14. On January 3, 2011, at the commission's request, relator was examined by orthopedic surgeon Sheldon Kaffen, M.D. Dr. Kaffen examined relator for the allowed conditions of all three industrial claims. In his six-page narrative report, Dr. Kaffen opined:

Based on the history and physical examination and referencing the AMA Guides to the Evaluation of Permanent Impairment, 5th Edition, it is my conclusion the injured worker has sustained a permanent impairment of 4% of the whole person due to the allowed conditions in all three claims.

{¶ 33} 15. On January 3, 2011, Dr. Kaffen completed a Physical Strength Rating form. On the form, Dr. Kaffen indicated by his mark that relator is capable of sedentary work.

{¶ 34} 16. Following a May 5, 2011 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. Relying upon the reports of Drs. Kaffen and Freedman, the SHO determined that the industrial injuries permit sedentary work. After reviewing the non-medical disability factors, the SHO determined that relator is able to perform sustained remunerative employment.

{¶ 35} 17. On May 16, 2011, Dr. Gupta completed form C-9 on which he requested, on relator's behalf, "Vocational Rehab[ilitation] Therapy."

{¶ 36} 18. Dr. Gupta's C-9 prompted the bureau to request a file review from vocational rehabilitation consultant James R. Greene.

{¶ 37} 19. On May 31, 2011, Mr. Greene issued a three-page report, stating:

**File Summary:** Ms. Gibbs developed bilateral carpal tunnel syndrome while employed for Thistledown, Employer of Record (EOR) as a pari mutuel clerk. Ms. Gibbs' date of injury is 9/3/2008. Initially, injured worker sought treatment from her family physician. She later was referred

to Dr. Richardson. Dr. McKenzie performed injured worker's surgery on her left wrist in 2/2009 as well as surgery on her right wrist in 11/2009. Injured worker has received occupational and physical therapy for this injury.

Ms. Gibbs is a 64-year-old female who graduated from high school in 1965. She participated in vocational training program in 1970 that required keypunch machine training. Injured worker's work history consists of elevator operator, packer, drill press operator, and most recently, with the EOR as a pari mutual ticket seller for twenty-three years.

Ms. Gibbs was re-referred for vocational rehabilitation services on 5/18/2011. Injured worker has not worked since 9/12/2008. Case records note numerous barriers preventing injured worker from being a suitable candidate for vocational rehabilitation services: EOR cannot accommodate injured worker with a position to return to; injured worker is unable to drive due to her injury; injured worker continues to experience pain; and injured worker has refused vocational rehabilitation services three previous times. Case documentation indicates that the nurse case manager does not indicate that injured worker is a suitable candidate for vocational rehabilitation services. Case records note that injured worker has received Social Security Disability benefits in the amount of $1,117.00 per month since February 2009. The vocational rehabilitation coordinator closed the file as non-feasible.

**Conclusion and Recommendations:** Based on my review, Ms. Gibbs' file should remain closed. Injured worker has numerous barriers to returning to work and has refused vocational rehabilitation services on three previous referrals. Injured worker is not feasible for vocational rehabilitation services at this time.

{¶ 38} 20. On June 3, 2011, the bureau issued an order denying relator's C-9 request. Relator administratively appealed.

{¶ 39} 21. Following a July 5, 2011 hearing, a district hearing officer ("DHO") issued an order denying relator's C-9 request. The DHO's order explains:

Upon review and consideration of the evidence in the claim file and statements at hearing the vocational rehabilitation closure as reflected in the Bureau of Workers' Compensation order dated 06/03/2011 remains in full force and effect.

Mr. Greene gives a reasoned opinion as reflected in his letter dated 05/31/2011. He provides multiple factors indicating the reason to conclude that the Injured Worker is not currently feasible for vocational rehabilitation.

{¶ 40} 22.  Relator administratively appealed the DHO's order of July 5, 2011.

{¶ 41} 23. Following an August 16, 2011 hearing, an SHO issued an order affirming the DHO's order of July 5, 2011.  The SHO's order explains:

The underlying decisions to close the vocational rehabilitation file due to non-feasibility are affirmed. The report from vocational rehabilitation consultant James Greene, B.S., CDMS, LSW, CCM, 05/31/2011, is relied upon. The consultant lists the multiple factors as to why Injured Worker is not currently feasible for vocational rehabilitation. Injured Worker was previously closed for vocational rehabilitation services 05/07/2009, 05/27/2010, and 08/24/2010, due to non-feasibility due to medical instability and lack of interest in services with the goal of returning to work. Injured Worker's medical status has not been shown to have changed and the record shows very limited rehabilitation potential. The opinion from Mr. Greene is found to be credible.

{¶ 42} 24. On September 15, 2011, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of August 16, 2011.

{¶ 43} 25.  On November 10, 2011, Dr. Gupta wrote:

This is to certify that Ms. Gibbs is my patient and suffers from Bilateral Carpal Tunnel. She had surgery and physical therapy, but still suffers with severe pain and cannot hold any amount of weight, she drops things and has a hard time with day to day chores. I feel that she should be placed on Permanent Total Disability because she is not able to return to work.

{¶ 44} 26. On November 22, 2011, relator filed her second application for PTD compensation.  In support, relator submitted the November 10, 2011 report of Dr. Gupta.

{¶ 45} 27. The PTD application form asks the applicant to list her workers' compensation claims.  In response, relator only listed claim No. 08-367558.

{¶ 46} 28. On February 23, 2012, at the commission's request, relator was examined by orthopedic surgeon Dennis A. Glazer, M.D. Dr. Glazer examined for two of the industrial claims, i.e., claim Nos. 08-367558 and 07-323940. In his six-page narrative report dated March 25, 2012, Dr. Glazer opines:

> Regarding contusion of the right knee, there are no limitations. The claimant can walk, sit, stand, climb, bend and kneel without restriction.
>
> With regard to the carpal tunnel syndrome, the claimant can do no rapid repetitive motion. She can only lift 3 - 5 lb[s]. intermittently. She cannot use her hands for fine manipulation, or pushing or pulling with her hands.

{¶ 47} 29. In March 2012, Dr. Glazer completed a Physical Strength Rating form. On the form, Dr. Glazer indicated by his mark that relator is capable of sedentary work. In the space provided under the pre-printed query "[f]urther limitations, if indicated," Dr. Glazer wrote in his own hand:

> No lifting with hands over 3 lbs[.] No rapid use or fine motor work with hands[.]

{¶ 48} 30. Following an August 30, 2012 hearing, an SHO mailed an order on September 26, 2012 denying relator's second PTD application. The order discusses the reports of Drs. Gupta, Kaffen, Freedman, and Glazer.

{¶ 49} Thereafter, the SHO briefly discusses efforts at vocational rehabilitation:

> The multiple attempts at vocational rehabilitation were unsuccessful due to either Ms. Gibbs disinterest in same or her being medically unstable when a program was suggested. The last vocational rehabilitation closure resulted in a letter of 5/20/11 noting that due to the many prior unsuccessful attempts to initiate a vocational rehabilitation program, combined with Ms. Gibbs lack of desire to participate in same, caused her latest file to be closed.

{¶ 50} 31. On October 12, 2012, relator moved for reconsideration of the SHO's order of August 30, 2012.

{¶ 51} 32. On November 20, 2012, the three-member commission mailed an interlocutory order, stating:

It is the finding of the Industrial Commission that the Injured Worker has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a clear mistake of fact in the order from which reconsideration is sought, and a clear mistake of law of such character that remedial action would clearly follow.

Specifically, it is alleged that the Staff Hearing Officer failed to fully analyze the non-medical disability factors and failed to address the additional physical restrictions enumerated by Dennis Glazer, M.D.

Based on these findings, the Industrial Commission directs that the Injured Worker's request for reconsideration, filed 10/12/2012, is to be set for hearing to determine whether the alleged mistakes of fact and law as noted herein are sufficient for the Industrial Commission to invoke its continuing jurisdiction.

{¶ 52} 33. On December 11, 2012, the three-member commission heard relator's request for reconsideration and also heard the merits of the PTD application.

{¶ 53} 34. On February 26, 2013, the three-member commission mailed an order that exercises continuing jurisdiction over the SHO's order of August 30, 2012 (mailed September 26, 2012), vacates that order, and then determines the merits of the second PTD application.

{¶ 54} Denying the merits of the second PTD application, the commission's order explains:

Notwithstanding the granting of the Injured Worker's request for reconsideration, filed 10/12/2012, the Injured Worker's IC-2 Application for Compensation for Permanent Total Disability, filed 11/22/2011, remains denied.

The Commission notes that the Injured Worker has two industrial injuries. The first industrial injury occurred on 03/27/2007. This injury resulted from the Injured Worker banging her right knee on the corner of a money drawer. The Injured Worker went to the hospital, and received stitches which were later removed. Claim 07-323940 has been allowed for CONTUSION OF RIGHT KNEE.

The second injury occurred on 09/03/2008. This injury resulted from the Injured Worker's repetitive hand duties as a paramutual clerk (a cashier). The Injured Worker last worked in September 2008. Claim number 08-367558 has been allowed for BILATERAL CARPAL TUNNEL SYNDROME. The Injured Worker has had two surgeries in the 2008 claim. A right carpal tunnel release was performed on 07/22/2009, and a left carpal tunnel release was performed on 11/18/2009.

Addressing the merits of permanent and total disability, the Commission finds the 03/25/2012 report of Dennis Glazer, M.D., to be persuasive as to the Injured Worker's residual functional capacity. Dr. Glazer opined the Injured Worker was capable of performing sedentary employment. Dr. Glazer also found the Injured Worker could not perform work involving rapid repetitive hand motion, and limited the Injured Worker's lifting to only three to five pounds intermittently. Dr. Glazer also restricted the Injured Worker from using her hands for fine manipulation or pushing/pulling. Based on Dr. Glazer's opinion, the Commission finds that the Injured Worker retains the capacity to perform sedentary work consistent with the previously listed restrictions. Thus, an analysis of the Injured Worker's nonmedical disability factors is necessary.

The record reveals the following nonmedical disability factors. The Injured Worker is 66 years old, is a high school graduate, and has worked as a drill press operator, suit packer, elevator operator and as a paramutal clerk.

The Injured Worker's age, 66, is found to be a negative vocational factor. However, the Injured Worker's age, in and of itself does not prevent the Injured Worker from obtaining work consistent with her restrictions. Further, the fact remains that some employers prefer to hire older workers.

The Injured Worker's education, a high school graduate, is found to be a positive vocational asset. With this level of education, and based on the information provided in the IC-2 application, the Injured Worker has adequate literacy and math skills, enabling her to understand training manuals or other written employment materials in order to successfully complete training programs to qualify her for sedentary employment consistent with her restrictions.

The Injured Worker's job history is found to be a positive vocational factor. While it may not have provided her with immediately transferable sedentary job skills consistent with her restrictions, it has allowed her to perform skilled work throughout her employment history. For instance, the Injured Worker's employment as a drill press operator and paramutual clerk are skilled positions that required the Injured Worker to work with people, learn new job duties and follow written instructions. Consequently, the Injured Worker has successfully completed on-the-job training and that she became qualified to perform new types of employment. This ability to learn new job skills when necessary would allow the Injured Worker to undergo job training consistent with her restrictions through a formal retraining process or through on-the-job training.

In reference to the Injured Worker's ability to complete job retraining or rehabilitation, the Commission recognizes that the Injured Worker was denied vocational rehabilitation services by the Bureau of Workers' Compensation in 2011, however, the Commission notes this denial specifically mentioned that one of the major barriers to offering the Injured Worker these vocational services was the fact the Injured Worker had refused vocational rehabilitation on three previous referrals. The Injured Worker's refusal of vocational services three times demonstrates a lack of a good faith effort to pursue vocational retraining when it was available to her. Therefore, while the Commission does accept the Bureau of Workers' Compensation's findings of the Injured Worker being declared non-feasible in 2011 for vocational rehabilitation, it is nevertheless the Commission's responsibility to ultimately decide issues of the Injured Worker's potential to be rehabilitated. State ex rel. Rodriguez v. Indus Comm., 67 Ohio St.3d 210, 616 N.E.2d 929 (1993).

It is additionally noted that, pursuant to State ex rel. B.F. Goodrich Co. v. Indus. Comm., 73 Ohio St.3d 525, 653 N.E.2d 525 (1995), an award of permanent total disability compensation is to be reserved for the most severely disabled workers and should be allowed only when there is no possibility for reemployment. Therefore, the Injured Worker's refusal of vocational rehabilitation services would clearly be a factor weighing against awarding permanent total disability.

In summary, the Commission finds that even though the Injured Worker's age is not a positive vocational factor, it does not exclusively preclude the Injured Worker from reemployment, especially considering the Injured Worker possesses the literacy/math skills to learn new job skills consistent with her restrictions. Therefore, it is reasonable to conclude the Injured Worker is not permanently and totally disabled, and for the aforementioned reasons, the IC-2 application is denied.

{¶ 55} 35. On June 7, 2013, relator, Elizabeth Gibbs, filed this mandamus action.

Conclusions of Law:

{¶ 56} The main issue is whether the commission abused its discretion in determining that relator unjustifiably refused offers of vocational rehabilitation services such that the determination can be used as a factor weighing against an award of PTD compensation.

{¶ 57} The magistrate finds no abuse of discretion.  Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 58} The Supreme Court of Ohio has repeatedly addressed the obligation of a PTD claimant to undergo opportunities for rehabilitation. *State ex rel. B.F. Goodrich Co. v. Indus. Comm.* (1995), 73 Ohio St.3d 525; *State ex rel. Bowling v. Natl. Can Corp.* (1996), 77 Ohio St.3d 148; *State ex rel. Wood v. Indus. Comm.* (1997), 78 Ohio St.3d 414; *State ex rel. Wilson v. Indus. Comm.* (1997), 80 Ohio St.3d 250; *State ex rel. Cunningham v. Indus. Comm.* (2001), 91 Ohio St.3d 261.

{¶ 59} In *B.F. Goodrich*, the court states:

The commission does not, nor should it, have the authority to force a claimant to participate in rehabilitation services. However, we are disturbed by the prospect that claimant may have simply decided to forgo retraining opportunities that could enhance re-employment opportunities. An award of permanent total disability compensation should be reserved for the most severely disabled workers and should be allowed only when there is no possibility for re-employment.

*Id.* at 529.

{¶ 60} In *Wilson*, the court states:

> We view permanent total disability compensation as compensation of last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed. Thus, it is not unreasonable to expect a claimant to participate in return-to-work efforts to the best of his or her abilities or to take the initiative to improve reemployment potential. While extenuating circumstances can excuse a claimant's nonparticipation in reeducation or retraining efforts, claimants should no longer assume that a participatory role, or lack thereof, will go unscrutinized.

*Id.* at 253-54.

{¶ 61} At issue here are two paragraphs of the commission's order of December 11, 2012:

> In reference to the Injured Worker's ability to complete job retraining or rehabilitation, the Commission recognizes that the Injured Worker was denied vocational rehabilitation services by the Bureau of Workers' Compensation in 2011, however, the Commission notes this denial specifically mentioned that one of the major barriers to offering the Injured Worker these vocational services was the fact the Injured Worker had refused vocational rehabilitation on three previous referrals. The Injured Worker's refusal of vocational services three times demonstrates a lack of a good faith effort to pursue vocational retraining when it was available to her. Therefore, while the Commission does accept the Bureau of Workers' Compensation's findings of the Injured Worker being declared non-feasible in 2011 for vocational rehabilitation, it is nevertheless the Commission's responsibility to ultimately decide issues of the Injured Worker's potential to be rehabilitated. State ex rel. Rodriguez v. Indus Comm., 67 Ohio St.3d 210, 616 N.E.2d 929 (1993).

> It is additionally noted that, pursuant to State ex rel. B.F. Goodrich Co. v. Indus. Comm., 73 Ohio St.3d 525, 653 N.E.2d 525 (1995), an award of permanent total disability compensation is to be reserved for the most severely disabled workers and should be allowed only when there is no possibility for reemployment. Therefore, the Injured Worker's refusal of vocational rehabilitation services would clearly be a factor weighing against awarding permanent total disability.

{¶ 62} When the commission finds that relator's three refusals of vocational rehabilitation services demonstrates a lack of a good-faith effort to pursue vocational retraining when it was available, the commission implies that all three file closures in the SHO's order of August 16, 2011 fail to provide extenuating circumstances that can excuse relator's non-participation at the time of the offers. Those three file closures occurred on May 7, 2009, May 27, 2010, and August 24, 2010, as identified specifically in the SHO's order of August 16, 2011 that denied relator's C-9 application for vocational services.

{¶ 63} Analysis begins with the observation that the file closure of May 7, 2009 clearly and unambiguously provided extenuating circumstances that excused relator's non-participation. That is, relator was clearly justified in refusing the first of the vocational services offers due to her pending surgery for the allowed conditions of the industrial claim. Accordingly, the commission is incorrect when it states in its order that relator demonstrated "three times" a lack of a good-faith effort to pursue vocational retraining.

{¶ 64} After relator's surgeries in July and November 2009, she was again referred for vocational rehabilitation services on May 3, 2010. However, the second referral ended as a file closure on May 27, 2010, as previously noted. As indicated in the May 27, 2010 closure report, relator told the case manager on May 26, 2010 that "she is not interested in vocational services at this time, noting that her therapy is coming to an end and that she expects to return to work sometime in July." Unfortunately, the May 27, 2010 closure report fails to give any information upon which it can be determined whether relator actually had a realistic good-faith expectation that she would be returning to work sometime in July. There was certainly no suggestion in the May 27, 2010 closure report that relator did not have a good-faith expectation that she would be returning to work in July 2010. Presumably, the return to work did not materialize. However, we are not told any of the circumstances.

{¶ 65} In any event, relator's so-called "lack of interest in vocational services" may have been justified such that an expectation of a return to work may have provided

extenuating circumstances that can excuse relator's non-participation. (May 27, 2010 closure report.)

{¶ 66} Under the circumstances, the May 27, 2010 closure report provides no evidence upon which the commission can rely to support its finding that relator demonstrated on three occasions a lack of a good-faith effort to pursue vocational retraining when it was available.

{¶ 67} As earlier noted, on July 17, 2010, relator was referred for vocational rehabilitation services for a third time. However, this referral also ended in a closure report. The closure report was issued August 24, 2010.

{¶ 68} Unlike the two prior closure reports, the August 24, 2010 closure report provides evidence upon which the commission can rely to support a finding that there were no extenuating circumstances upon which relator can be excused from non-participation at the time of the offer in August 2010. Again, the August 24, 2010 closure report states:

> Ms. Gibbs' initial interview was held on 8/4/10 at a restaurant near her home. At the time of the interview Ms. Gibbs declined to sign the rehabilitation agreement and the consent to release medical information form, stating that she wanted to discuss these forms first with her legal counsel and her physician before signing them. Ms. Gibbs telephoned this case manager on 8/18/10 stating that she was going to have her signed forms faxed over to this case manager. However, the signed forms were not received, and when this case manager telephoned Ms. Gibbs on 8/20/10, she stated that she has decided that she does not want to participate in vocational services at this time. * * * [I]t was decided that Ms. Gibbs' vocational file would be closed as she is not interested in vocational services.

{¶ 69} Wanting to discuss the matter with legal counsel and her physician is not a sufficient basis for extenuating circumstances that might excuse non-participation. Between August 4 and August 20, 2010, relator had an opportunity to confer with her lawyer and her physician. It was clearly within the commission's fact-finding discretion to conclude that relator had not provided an extenuating circumstance justifying non-participation.

{¶ 70} Based upon the foregoing analysis, the magistrate concludes that the commission incorrectly stated that relator unjustifiably refused vocational rehabilitation services on three occasions.  However, the August 24, 2010 closure report clearly provided the commission with some evidence to support a finding that relator unjustifiably refused an offer of vocational rehabilitation services in August 2010.

{¶ 71} In the magistrate's view, the commission error in stating that unjustifiable refusals occurred on three occasions is not fatal to a determination that "refusal of vocational rehabilitation services would clearly be a factor weighing against awarding permanent total disability," as the commission concluded in its order.  That is, the commission's determination regarding vocational rehabilitation services is supported by some evidence, i.e., the August 24, 2010 closure report.

{¶ 72} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).