[Cite as *State ex rel. Garmier v. Indus. Comm.*, 2016-Ohio-578.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Howard Garmier, | : | |
| Relator, | : | |
| | : | No. 15AP-196 |
| v. | : | (REGULAR CALENDAR) |
| Premium of North Carolina, Inc. and Industrial Commission of Ohio, | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on February 18, 2016

*Regas & Haag, Ltd.,* and *Matthew R. Carona,* for relator.

*Michael DeWine*, Attorney General, and *Amanda B. Brown,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

BROWN, J.

{¶ 1} Relator, Howard Garmier, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying his application for permanent total disability ("PTD") compensation, and to enter a new order granting said compensation.

{¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate who issued the appended decision, including findings of fact and conclusions of law. The magistrate recommended that this court deny relator's request for a writ of mandamus.

{¶ 3}    Relator has filed an objection to the magistrate's decision, arguing that the magistrate erred in finding the commission did not abuse its discretion in determining that relator failed to present extenuating circumstances to excuse him from participating in vocational rehabilitation.  Relator notes that the record contains two failed attempts at vocational rehabilitation services, but argues that extenuating circumstances were present on both occasions due to the presence of side effects from medication.  According to relator, there is a lack of evidence to support the notion he was not experiencing side effects from his medication while being evaluated for those services, and he thus argues the evidence fails to support the commission's finding that his failure to participate in vocational rehabilitation was a significant factor in denying PTD compensation.

{¶ 4}    In order to obtain a writ of mandamus, a relator must demonstrate "a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief."  *State ex rel. Manpower of Dayton v. Indus. Comm.,* 10th Dist. No. 14AP-376, 2015-Ohio-2650, ¶ 9, citing *State ex rel. AutoZone, Inc. v. Indus. Comm.*, 117 Ohio St.3d 186, 2008-Ohio-541.  A relator seeking to show a clear legal right to relief " 'must demonstrate that the commission abused its discretion by entering an order unsupported by some evidence in the record.' "  *Manpower of Dayton* at ¶ 9, quoting *State ex rel. Hughes v. Goodyear Tire & Rubber Co.*, 26 Ohio St.3d 71, 73 (1986).  Conversely, "[w]hen the record contains 'some evidence' to support the commission's factual findings, a court may not disturb the commission's findings in mandamus."  *Manpower of Dayton* at ¶ 9, quoting *State ex rel. Fiber-Lite Corp. v. Indus. Comm.*, 36 Ohio St.3d 202 (1988), syllabus.

{¶ 5}    The Supreme Court of Ohio has held that PTD compensation is "compensation of last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed." *State ex rel. Wilson v. Indus. Comm.,* 80 Ohio St.3d 250, 253 (1997).  As such, "it is not unreasonable to expect a claimant to participate in return-to-work efforts to the best of his or her abilities or to take the initiative to improve reemployment potential." *Id.*  Further, "[w]hile extenuating circumstances can excuse a claimant's nonparticipation in reeducation or retraining efforts, claimants should no longer assume that a participatory role, or lack thereof, will go unscrutinized." *Id.* at 253-54.

{¶ 6} Upon review, we agree with the magistrate's determination that the commission did not abuse its discretion in discounting relator's assertions that he was suffering significant side effects from medication that precluded him from participating in rehabilitative services. As noted by the magistrate, the order of the staff hearing officer ("SHO") addressed relator's contention that he was unable to participate in vocational rehabilitation due to side effects from the medication Lyrica. Specifically, the SHO cited the treatment records of Dr. Michael Rivera-Weiss, who noted that relator reported "no side effects" from the use of his medications, and that subsequent treatment records also reflected "an absence of adverse side effects." The SHO concluded that those treatment records "in no way corroborate the litany of symptoms the Injured Worker reported to vocational rehabilitation." Further, the magistrate, in reviewing all of the office notes of relator's treating physicians, noted that "on only three occasions did relator report that he was feeling tired from using Lyrica," and that "[t]he remaining records, spanning from October 2012 through October 2014, specifically indicate that relator was not experiencing any side effects from his use of Percocet and Lyrica."

{¶ 7} In light of the foregoing, we find that the magistrate properly determined the commission did not abuse its discretion in finding relator failed to present extenuating circumstances to excuse him from participating in vocational rehabilitation. Further, we agree with the magistrate's determination that there is some evidence in the record to support the commission's finding that relator was capable of performing some sustained remunerative employment. We therefore find no merit to relator's objection.

{¶ 8} Upon review of the magistrate's decision, as well as an independent review of the record, we find that the magistrate has properly determined the relevant facts and applied the appropriate law. Accordingly, we overrule relator's objection and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Based upon the foregoing, we hereby deny relator's requested writ of mandamus.

*Objection overruled; writ of mandamus denied.*

DORRIAN, P.J., and LUPER SCHUSTER, J., concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Howard Garmier, | : | |
| Relator, | : | |
| v. | : | No. 15AP-196 |
| Premium of North Carolina, Inc. and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

## MAGISTRATE'S DECISION

### Rendered on October 28, 2015

*Regas & Haag, Ltd.,* and *Matthew R. Carona,* for relator.

*Michael DeWine*, Attorney General, and *Amanda B. Brown,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 9} Relator, Howard Garmier, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied his application for permanent total disability ("PTD") compensation, and ordering the commission to find that he is entitled to that award.

Findings of Fact:

{¶ 10} 1. Relator sustained a work-related injury on January 14, 2009, and his workers' compensation claim has been allowed for the following conditions:

> SPRAIN OF RIGHT ANKLE; CLOSED FRACTURE RIGHT LATERAL MALLEOLUS; RIGHT ACHILLES TENDINITIS; RIGHT PERONEAL TEAR; RIGHT VENOUS EMBOLISM DEEP VEIN THROMBOSIS PROXIMAL LOWER EXTREMITY; RIGHT VENA CAVA THROMBOSIS; TENOSYNOVITIS RIGHT ANKLE; CHONDROMALACIA RIGHT ANKLE; RIGHT PERONEAL NERVE INJURY; RIGHT SURAL NERVE INJURY.

{¶ 11} 2. Relator has undergone two surgeries to repair his ankle; however, relator continues to have significant pain necessitating that he undergo multiple series of injections and he takes Percocet and Lyrica.

{¶ 12} 3. Steven Coss, M.D., began treating relator shortly after the injury and the record contains office notes beginning January 23, 2009. Dr. Coss is the physician who operated on relator's ankle. Dr. Coss' office notes document relator's continuing difficulties, including the pain he continued to experience, and the various steps taken to try and control relator's pain.

{¶ 13} 4. Relator began treating with Michael Riveraweiss, M.D., in March 2012. In his March 23, 2012 office note, relator reported that his pain level was 6 on a scale level of 1 to 10 and Dr. Riveraweiss indicated this was considered moderate to severe. Dr. Riveraweiss noted that relator was taking Percocet for pain and started relator on Lyrica for nerve pain.

{¶ 14} 5. Dr. Riveraweiss continued to treat relator up until he filed for PTD compensation in August 2014, and beyond. While taking Percocet in conjunction with Lyrica, relator reported pain as low as 3 to 4 on a scale of 1 to 10 in March 2014 and as high as 8 on a scale of 1 to 10 in November 2013. In office notes dated July 12, August 14, and September 11, 2012, relator reported he was experiencing side effects from taking Percocet and Lyrica indicating that he felt tired and at times forgetful while taking Lyrica. In the remainder of the office notes from Dr. Riveraweiss from October 11, 2012 through October 30, 2014, relator reported that he was taking his medications with no side effects.

{¶ 15} 6. Relator was referred for a vocational rehabilitation and an initial assessment was prepared dated June 28, 2012. In that initial assessment, it was noted that relator was 54 years old, that he had reliable transportation, a valid driver's license, and that his driving privileges had not been suspended. Relator also indicated that he was

able to use the internet to research job openings and his workers' compensation claim. Initial feasibility concerns included:

> Attend next [physician of record] appointment if [physician of record] is supportive of injured worker participating in [vocational rehabilitation] services.
>
> Feasibility concerns include level of interest in returning to work; past lack of participation; scheduled surgery; vacation; [documentation] of medical, psychological, pain medication or substance abuse either related or non-related to claim.

{¶ 16} 7. A functional capacity evaluation was conducted on July 31, 2012. Ultimately, the evaluator recommended that relator had light-duty work limitations.

{¶ 17} 8. Relator's case manager, Fred Butler, attended his next office visit with Dr. Coss on August 21, 2012. According to his case manager's August 25, 2012 report, relator brought an internet generated website entitled "[u]nderstanding potential side effects can help you stay on track" with reference to the use of Lyrica and informed Dr. Coss he was experiencing blurry vision, weight gain, trouble concentrating, dry mouth, and feeling high. He also told Dr. Coss he was unable to drive or work with machines while taking the medication. As a result, the case manager indicated that "the [physician of record] was hesitant to support his participation in a [return to work] program because of the roadblocks stated by the client."

{¶ 18} As a result, no individual rehabilitation plan was written and relator's vocational rehabilitation file was closed. [1]

{¶ 19} 9. Relator would again be referred for vocational rehabilitation and, in a letter dated December 3, 2013, was informed:

> **You are not feasible. You are still experiencing high pain levels and you ambulate with a cane. You have not been released to return to work and you do not have a treatment plan in place.**

(Emphasis sic.)

{¶ 20} 10. Relator filed his application for PTD compensation on August 1, 2014. According to his application, relator was 55 years of age, had been receiving Social

---

[1] This was the only record in which relator informed Dr. Coss that he was experiencing any side effects resulting from his use of Lyrica.

Security Disability payments in the amount of $1,000 since June 2012, had completed the 11th grade in 1976, obtained his CDL (commercial driver's license), and was able to read, write, and perform basic math. Relator indicated that he could drive a car, but only for local and short distances because of permanent restrictions from Drs. Riveraweiss and Coss.

{¶ 21} In support of his application, relator submitted the June 6, 2014 report of Dr. Coss who stated:

> Since that time the injured worker has been treated by pain management and continues to undergo conservative treatment including pain medication, anti-inflammatory, cortisone injections and visco-supplementation injections. The injured worker continues to complain of pain, swelling and stiffness. On most recent physical examination he limps while walking, using a cane for assistance, he has marked decreased range of motion, pain and discomfort to palpation anterior lateral ankle tenderness.
>
> * * * I have reviewed the injured worker's records and taken into consideration the Miller Criteria. All my opinions are given within a reasonable degree of medical probability and certainty. * * * He has continued to deteriorate through the years. He has maintained an extreme amount of discomfort requiring regular office visits for re-evaluation of treatment with various types of pain medication with pain management and conservative treatments. Therefore it is my opinion that his continuing ankle pain, level of dysfunction and inability to stand or walk for extended periods of time he would not be able to engage i[n] sustained remunerative employment, that is to say that he would not be able to reliabl[y] return to the work environment due solely to his workers' compensation injury. He is able to do activities of daily living and work about his house. However that does not begin to bring him to the work status of a regular employee. He has been enrolled in Vocational Rehabilitation programs and has been unsuccessful in establishing an occupation in which he would be able to perform on a daily basis without difficulty or [a] significant increase in symptoms.

{¶ 22} Relator also submitted the July 30, 2014 report of Dr. Riveraweiss who stated:

> In spite of Mr. Garmier's multiple treatments to date, his condition has deteriorated through the years. His pain continues to be severe without medications. He has been

> through a vocational rehabilitation program in the past which was unsuccessful finding him gainful employment which he could perform without increased pain symptoms. Mr. Garmier continues with ankle pain, inability to stand or walk for extended periods of time. His pain is only improved with several medications, which he will need long term.
>
> It is my opinion within a reasonable degree of medical probability secondary to all the above Mr. Garmier is permanently and totally disabled of any gainful employment. This is secondary from allowed diagnosis as above mentioned, a direct result from injury sustained at work on January 14, 2009. If you have any questions, please do not hesitate to contact me.

{¶ 23} 11. An independent medical evaluation was conducted by Robin G. Stanko, M.D. In his September 19, 2014 report, Dr. Stanko identified the allowed conditions in relator's claim, provided his physical findings upon examination, and ultimately concluded that relator had a 47 percent whole person impairment and could perform sedentary work activity involving lifting up to 10 pounds with rare walking activity, and no climbing, kneeling, crawling activity.

{¶ 24} 12. A vocational assessment was prepared by Mark A. Anderson on October 22, 2014. Mr. Anderson administered various testing and reported that the results indicated the following:

> This counselor administered the SRA clerical, math and reading indexes to the claimant as part of the October 22, 2014 Vocational Evaluation. Mr. Garmier's SRA clerical aptitudes placed below the 1st percentile, indicating a lack of clerical aptitude. He reported that he does not type and has very limited computer skills. His reading placed at the mid-1st Grade Level while his math placed below the 3rd Grade Level. The Purdue Pegboard manual dexterity test was also administered by this counselor, and yielded results below the 1st percentile on all levels.

{¶ 25} Based on the exertional limitations, as well as the results of testing, his lack of transferable skills, his reliance on a cane for ambulation, his limited driving abilities, and his time away from competitive work, Mr. Anderson concluded that relator had no return to work potential, as he was capable of performing less than the full range of sedentary activities. Further, Mr. Anderson indicated that relator was not a feasible candidate for vocational rehabilitation.

{¶ 26} 13. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on December 2, 2014. The SHO relied on the report of Dr. Stanko and found that relator was capable of performing sedentary work. Thereafter, the SHO found that relator's current age of 56 years was a vocationally neutral factor, that his 11th grade education coupled with the fact that he did not receive his GED because he was working a good job, while classified as a limited education, was a positive vocational factor. The SHO also concluded that relator's work history as a carpenter, forge helper, and truck driver was a positive vocational factor.

{¶ 27} Thereafter, the SHO examined relator's efforts to be vocationally retrained for other work and ultimately concluded that relator's failure to participate in vocational rehabilitation was a significant factor in denying his request for PTD compensation. Specifically, the SHO addressed the evidence of relator's involvement with vocational rehabilitation, stating:

> The Injured Worker was referred to vocational rehabilitation in July of 2012 but did not participate at that time. The closure report indicates the Injured Worker, at the request of his treating physician, H. Steven Coss, M.D., had a functional capacity evaluation performed on 07/31/2012. This testing indicated the Injured Worker could perform work in the light-exertion level.
>
> When the Injured Worker met with his case manager to go over the results of his functional capacity evaluation the Injured Worker brought an internet article to the case manager regarding the side effects of one [of] his medications, Lyrica, used to treat neuropathic nerve pain. The article cited dizziness, sleepiness, and swelling of hands legs and feet as side effects. The Injured Worker also reported blurry vision, weight gain, trouble concentrating, feeling "high" and dry mouth as side effects. The Injured Worker further indicated he was unable to drive or operate heavy machinery while on this medication.
> The use of this medication was cited in the closure report as a road block to vocational rehabilitation. The vocational rehabilitation file was closed before any service were rendered.
>
> It is significant to note the treatment records of the Injured Worker's pain management physician, Michael River-Weiss [sic], M.D., who prescribes the Lyrica. The treatment records dated 04/17/2012, 05/18/2012, and 06/15/2012 each

indicate the Injured Worker reported "no side effects" from the use of his medications. On 07/12/2012, 08/14/2012, and 09/11/2012 the Injured Worker reported feeling tired from using Lyrica. However, the treatment records dated 10/11/2012, 11/15/2012, 12/13/2012 and 02/07/2013 again reflect an absence of adverse side effects. Dr. Rivera-Weiss [sic] continued to document the absence of side effects through 10/30/2014, the last treatment record submitted to the file. The treatment records in no way corroborate the litany of symptoms the Injured Worker reported to vocational rehabilitation.

The Injured Worker was re-referred to vocational rehabilitation in 2013. The closure letter dated 12/02/2013 indicates vocational rehabilitation was again closed without participation. The Injured Worker was deemed to be not feasible due to high pain levels.

The Injured Worker has never participated in vocational rehabilitation or retraining, despite two referrals. The Injured Worker began receiving social security disability benefits in June of 2012. This is a disincentive to returning to work.

Permanent total disability is a compensation "of last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed." *State ex rel. Wilson v. Industrial Commission,* 80 Ohio St.3d 250, 253 (1997). The Injured Worker's residual functional capacity for sedentary work, ability to learn semi-skilled and skilled trades, and varied work experience make him a candidate for rehabilitation and re-entry into the workforce. The failure to participate in vocational rehabilitation is a significant factor in denying this benefit of last resort.

Based on the above-listed physical and psychological capacities and non-medical disability factors, the Staff Hearing Officer finds the Injured Worker's disability is not total, and the Injured Worker is capable of engaging in sustained remunerative employment, or being retrained to engage in sustained remunerative employment.

{¶ 28} 14. Relator filed a request for reconsideration arguing that the SHO improperly relied on the report of Dr. Stanko and his bottom line assessment that relator could perform at a sedentary work level, improperly analyzed and classified his education

as positive when it was clearly limited and should have been considered negative, and improperly found that he had failed to participate in vocational rehabilitation when he was found not to be feasible.

{¶ 29} 15. In an order mailed January 30, 2015, relator's request for reconsideration was denied.

{¶ 30} 16. Thereafter, relator filed this instant mandamus action in this court.

Conclusions of Law:

{¶ 31} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 32} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 33} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 34} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is

not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 35} Relator's sole argument before this court focuses on his assertion that the commission improperly analyzed and classified his failure to participate in vocational rehabilitation, holding it against him instead of realizing that he was precluded from participating in vocational rehabilitation due to extenuating circumstances.

{¶ 36} The Supreme Court of Ohio has repeatedly addressed the obligation of an injured worker claiming permanent and total disability to pursue opportunities for rehabilitation. *See for example, State ex rel. B.F. Goodrich Co. v. Indus. Comm.*, 73 Ohio St.3d 525 (1995), *State ex rel. Bowling v. Natl. Can Corp.*, 77 Ohio St.3d 148 (1996), *State ex rel. Wood v. Indus. Comm.*, 78 Ohio St.3d 414 (1997), *State v. Wilson,* 77 Ohio St.3d 334 (1997). In *B.F. Goodrich,* the court held that the commission does not have the authority to force an injured worker to participate in rehabilitation services; however, an award of PTD compensation should be reserved for the most severely disabled workers and allowed only where there is no possibility for re-employment. The court in *Wilson* indicated that injured workers should no longer assume that a participatory role in rehabilitation, or lack thereof, would go unscrutinized while noting that extenuating circumstances could excuse an injured worker's non-participation in re-education or retraining efforts.

{¶ 37} In support of his argument, relator cites this court's decision in *State ex rel. Gibbs v. Thistledown, Inc.,* 10th Dist. No. 13AP-487, 2014-Ohio-2731, where this court agreed with its magistrate's determination that the commission incorrectly stated that Gibbs had failed to put forth a good-faith effort to pursue vocational rehabilitation on three occasions. The magistrate found that Gibbs' vocational rehabilitation file was closed two times due to extenuating circumstances. The magistrate found that when Gibbs refused the first offer of vocational services due to her pending surgery for the allowed conditions in her claim, such refusal constituted an extenuating circumstance. The magistrate also noted that it was possible that Gibbs expected that she would be able to return to work following her surgery and that such expectation of a return to work may have provided extenuating circumstances excusing her non-participation.

{¶ 38} Relator contends that here, he did not participate in vocational rehabilitation services because his physician noted that he was experiencing side effects from Lyrica which would prevent him from returning to work and Dr. Stanko had acknowledged that relator was not likely to see improvements with rehabilitation.

{¶ 39} In the present case, the SHO did address relator's contention that he did not participate in vocational rehabilitation because he was experiencing significant side effects from one of his medications, specifically Lyrica. In that regard, the SHO specifically discussed that evidence, stating:

> It is significant to note the treatment records of the Injured Worker's pain management physician, Michael River-Weiss [sic], M.D., who prescribes the Lyrica. The treatment records dated 04/17/2012, 05/18/2012, and 06/15/2012 each indicate the Injured Worker reported "no side effects" from the use of his medications. On 07/12/2012, 08/14/2012, and 09/11/2012 the Injured Worker reported feeling tired from using Lyrica. However, the treatment records dated 10/11/2012, 11/15/2012, 12/13/2012 and 02/07/2013 again reflect an absence of adverse side effects. Dr. Rivera-Weiss [sic] continued to document the absence of side effects through 10/30/2014, the last treatment record submitted to the file. The treatment records in no way corroborate the litany of symptoms the Injured Worker reported to vocational rehabilitation.

{¶ 40} As noted in the findings of fact, the magistrate has reviewed all of the office notes from Drs. Coss and Riveraweiss and, as the SHO specifically noted, on only three occasions did relator report that he was feeling tired from using Lyrica, specifically July 12, August 14, and September 11, 2012. The remaining records, spanning from October 2012 through October 2014, specifically indicate that relator was not experiencing any side effects from his use of Percocet and Lyrica. The magistrate finds that the commission did not abuse its discretion when it discounted relator's assertions that he was suffering significant side effects from the medication which precluded him from participating in rehabilitative services.

{¶ 41} Further, as the SHO noted, relator was re-referred for vocational rehabilitation services in 2013, but his file was summarily closed, without any assessment, due to high pain levels. As the SHO noted, relator has never participated in vocational rehabilitation or retraining. Further, the SHO noted that relator began receiving Social

Security Disability benefits in June of 2012 and noted that this was a disincentive to his returning to work.

{¶ 42} To the extent that relator points out that rehabilitation services were not likely to improve relator's condition, the magistrate notes that there is a difference between physical rehabilitation services and vocational rehabilitation services.  Dr. Stanko referenced the first while the SHO referenced the second.

{¶ 43} Finding that there is some evidence in the record to support the commission's determination that relator could return to some sustained remunerative employment and further finding that relator did not present extenuating circumstances to excuse him from participating in vocational rehabilitation, the magistrate finds that relator has not demonstrated that the commission abused its discretion.

{¶ 44} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation  and this court should deny his request for a writ of mandamus.



/S/ MAGISTRATE
STEPHANIE BISCA



**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).