DECISION
{¶ 1} Relator, Phil Thompson, filed this original action requesting this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio *Page 2 
("commission"), to vacate its order that denied relator permanent total disability ("PTD") compensation, and to enter an order granting such compensation.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.)
 {¶ 3} Relator filed objections to the magistrate's decision, as follows:
 1. The Magistrate erred in failing to find that the order improperly failed to consider the combined effects of the conditions;
 2. The Magistrate erred in failing to find that the commission's order is invalid because it does not contain an adequate explanation of why [relator] is capable of sustained remunerative employment and does not properly consider the disability factors; and
 3. The Magistrate erred failing to find that [relator] should be awarded [PTD].
 {¶ 4} Through these objections, relator makes the same arguments he made to the magistrate. However, we agree with the magistrate's careful consideration and resolution of each of these issues. Specifically, we agree with the magistrate that the commission did not fail to consider, in combination, the allowed conditions of both industrial claims in determining relator's residual functional capacity. We also agree with the magistrate that the commission's explanation of why relator is capable of sustained remunerative employment, while a limited explanation, is adequate and that the commission did not abuse its discretion in its analysis of the non-medical factors. Thus, we conclude that the commission did not err in denying relator PTD compensation, and we overrule relator's objections. *Page 3 
 {¶ 5} Having overruled relator's objections, we adopt the magistrate's decision, including the findings of fact and conclusions of law contained in it, as our own. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
 SADLER, P.J., and KLATT, J., concur. *Page 4 
 APPENDIX A IN MANDAMUS {¶ 6} In this original action, relator, Phil Thompson, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to *Page 5 
vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation.
Findings of Fact:
 {¶ 7} 1. Relator has two industrial claims that arose out of his employment as a millright for respondent Navistar International Transportation Corp. ("employer"), a self-insured employer under Ohio's workers' compensation laws.
 {¶ 8} 2. Relator's November 15, 1983 injury is allowed for "acute strain lumbar back; right herniated disc at L4-L5," and is assigned claim number 831394-22.
 {¶ 9} 3. Relator's March 7, 1996 injury is allowed for "contusion/sprain right wrist; contusion/abrasion right elbow; contusion/sprain right shoulder; acute sprain lumbosacral spine; massive right shoulder rotator cuff tear and right disc herniation at L4-5; aggravation of pre-existing spinal stenosis at L4-5," and is assigned claim number 96-334743.
 {¶ 10} 4. Relator filed an application for PTD compensation. Under the "Education" section of the application, relator states that he graduated from high school in 1953. The application form poses three questions to the applicant: (1) "Can you read?" (2) "Can you write?" and (3) "Can you do basic math?" Given the choice of "yes," "no" and "not well," relator selected the "yes" response to all three queries.
 {¶ 11} 5. Under the "Work History" section of the application, relator indicated that he was employed as a millwright at a factory from May 1964 to March 1996. Apparently, this almost 32 year period of employment was with respondent. Relator describes the basic duties of his millwright job as "repair conveyors, build conveyors, frame work." *Page 6 
 {¶ 12} 6. In support of his PTD application, relator submitted a report from Nancy Renneker, M.D., who examined him on June 6, 2002. In her four-page narrative report, Dr. Renneker opined:
 Based on medical records reviewed, my exam of this date, and my medical opinion, Phil Thompson's permanent job restrictions related to work injuries of 11-15-83 and 03-07-96 are: (1) no repetitive use of right (dominant) arm for any task, no reaching above waist height with right arm, no climbing of ladders, no pushing or pulling with right arm and no carrying of any object in right hand (2) able to sit for a maximum interval of 30 minutes, able to stand for a maximum interval of one hour, and able to walk on a level surface a maximum distance of 50 yards at a slow pace and (3) no repetitive use of right leg to operate foot controls, no floor to waist bending, no kneeling or crawling. Phil Thompson is able to occasionally squat, able to occasionally partially bend and Mr. Thompson is able to occasionally lift at waist height and carry in his left hand, objects weighing up to 8 lbs. Due to the above lifting restriction, Mr. Thompson's limited sitting tolerance, and no repetitive use of right arm for any task, it is my medical opinion that Phil Thompson is unable to do a sedentary job and Mr. Thompson is permanently and totally disabled from any form of sustained remunerative employment due to residual impairments related to work injuries of 11-15-83, (claim no. 8313194-22) and 03-07-96, (claim no. 96-334743 SI).
 {¶ 13} 7. Dr. Renneker also completed a form prepared by relator's counsel. On the form, Dr. Renneker indicated by checkmark that relator can use both hands, arms, and shoulders for "simple grasping," "medium dexterity," and "fine manipulation."
 {¶ 14} 8. On December 3, 2003, relator was examined at the employer's request by Alan L. Longert, M.D. In his narrative report, dated December 9, 2003, Dr. Longert wrote:
 Discussion: The high riding humeral head noted on the X-rays of the right shoulder, limited motion of the right shoulder more specifically abduction and flexion, weakness of the right shoulder abductors and biceps muscle are all permanent findings directly and proximately related to the unrepairable massive rotator cuff tear that occurred under claim number 96-334743. This has resulted in a significant impairment of the right upper extremity limiting the patient to no lifting of more than 5-10 pounds with both upper extremities no higher than waist level, no overhead work, no reaching, lifting greater than 1-2 pounds or repetitive work above waist level with the right upper extremity. *Page 7 
 Since the X-rays in 1997 did not show any scoliosis, it is reasonable to assume the right scoliosis from L3 to the sacrum occurred between the patient's surgical procedure in 2000, the time it took for the transference process fusion to occur because of the instability and increased motion from resection of the facets and partial resection of the pedicle. The retrospondylolisthesis at L2-3 is a result of increasing stress risers from the L3 to S1 transference process fusion. The numbness in the right foot is a permanent residual from the patient's disc herniation at L4-5. Residual functional impairment related to the disc herniation and aggravation of spinal stenosis at L4-5 along with the L3 to S1 transference process fusion limits the patient to no bending at the waist and no lifting from below the waist and no sitting for longer than thirty minutes at any one interval.
 {¶ 15} 9. On January 15, 2004, at the commission's request, relator was examined by Robin G. Stanko, M.D. On the first page of his three-page report, Dr. Stanko correctly lists all the allowed conditions of the two industrial claims. He indicates the date of injury for each claim and the two claim numbers.
On the last page of his report, Dr. Stanko opines:
 * * I feel the claimant could perform activity at sedentary work levels, that is lifting up to ten pounds with further restrictions of rare bending and twisting activity and no above shoulder lifting activity with the right arm and a five pound weight lifting limit with the right upper extremity.
 {¶ 16} 10. Dr. Stanko also completed a physical strength rating form dated January 16, 2004. On the form, Dr. Stanko indicated by checkmark that relator can *Page 8 
perform "sedentary work." He also wrote the additional restrictions to sedentary work contained in his narrative report.
 {¶ 17} 11. Relator submitted interrogatories to Dr. Stanko. In his response to the interrogatories, Dr. Stanko indicated that relator can sit for eight hours "in the course of a day," and for one hour "at one time." Relator can walk for four hours "in the course of a day," and for one hour "at one time." Relator can stand for two hours "in the course of a day," and for one-half hour "at one time."
 {¶ 18} 12. The employer requested a vocational report from Kathryn (Kari) Downey who is employed by Parman Group. The Downey report, dated July 26, 2004, is contained in the record before this court.
 {¶ 19} 13. Relator requested a vocational report from John P. Kilcher, a vocational expert. The Kilcher report, dated August 6, 2004, is contained in the record before this court.
 {¶ 20} 14. The commission requested an employability assessment report from James H. Houck, a vocational expert. The Houck report, dated October 29, 2004, is contained in the record before this court.
 {¶ 21} 15. Following a December 15, 2004 hearing, a staff hearing officer
("SHO") issued two orders, one for each claim, denying relator's PTD application.
The bodies of the two orders contain identical language, explaining:
 The Staff Hearing Officer has reviewed, considered, and evaluated all the relevant and pertinent information and documentation in file, to include the vocational reviews filed by both parties. He has, however, reached his own conclusions as finder of fact.
 The Staff Hearing Officer has actively and consciously factored the effects of any unrelated or unrecognized conditions afflicting the injured worker out of his decision in this claim. *Page 9 
 The Staff Hearing Officer has no reason to doubt that the injured worker's affidavit filed at today's hearing represents the truth as he sees it. His allegations are not at great variance with the objective findings of any examiner on file.
 The Staff Hearing Officer is persuaded that the recognized industrial injury was the direct cause of the injured worker's longevity retirement. While he is bound by the specific and final finding of fact in that regard dated 06/20/2001, all the evidence in file leads to that conclusion in fact and law. Employer's objection in that regard is, therefore, OVERRULED.
 The Staff Hearing Officer, however, is persuaded that the injured worker retains a realistic residual capacity to perform gainful employment. Reliance for this determination is placed in the 01/15/2004 examination performed on behalf of the Industrial commission by Physical Medicine and Rehabilitation Specialist Robin G. Stanko, M.D., and his responses to the detailed interrogatories prepared by counsel for the injured worker. Dr. Stanko concluded that the injured worker could indeed perform sedentary work. Most specifically, that the injured worker could remain seated for eight hours during the course of a given day, and that he could walk up to for four hours, one hour at a time for each. While Dr. Stanko imposed a five pound lifting restriction on the inured [sic] worker's recognized right upper extremity, he reported no restriction on the injured worker's fine finger dexterity.
 Dr. Stanko's findings are consistent in their essentials with those of Employer Orthopedic examiner Alan E. Longert, M.D., dated 12/09/2003.
 The parties stipulated at the hearing that the injured worker is right hand dominant as stated by Physical Medicine and Rehabilitation consultant Nancy Renneker, M.D., in reliance upon whose 06/06/2002 report, the IC-2 application under consideration was filed. The Staff Hearing Officer regards dominant upper extremity compromise to be self-evident as a disability factor. *Page 10 
 The Staff Hearing Officer, however, notes that Dr. Renneker certifies that the injured worker retains fine finger manipulation, medium dexterity, and grasping capacity in the injured dominant right upper extremity. The Staff Hearing Officer concludes that the injured worker's residual fine finger manipulation, medium dexterity, and grasping constitute a critical affirmative vocational asset.
 The Staff Hearing Officer, furthermore, recognizes the injured worker's seventy-two (72) year age (D.O.B. 11/02/1932) to be a vocational detractor.
 The Staff Hearing Officer, however, notes that the injured worker has a completed High School Education, and reports himself to be fully literate. The injured worker moreover, was a career millwright in the farm equipment and truck manufacturing industry. This was semi-skilled work. While the lifetime skills the injured worker used are likely not readily transferable, his thirty years as a millwright demonstrate transferable aptitudes which one with a completed education, full literacy, and dominant upper extremity dexterity should be expected to be able to apply to the sedentary work for which Robin G. Stanko, M.D., finds the injured worker capable.
(Emphasis sic.)
 {¶ 22} 16. However, one order lists only the allowed conditions for claim number 831394-22, while the other order lists only the allowed conditions for claim number 96-334743.
 {¶ 23} 17. On March 10, 2006, relator, Phil Thompson, filed this mandamus action.
Conclusions of Law:
 {¶ 24} Two issues are presented: (1) whether the commission failed to consider in combination the allowed conditions of both industrial claims in determining relator's residual functional capacity, i.e., his medical ability to perform sustained remunerative *Page 11 
employment; and (2) whether the commission abused its discretion by its analysis of the nonmedical factors.
 {¶ 25} The magistrate finds: (1) the commission did not fail to consider in combination the allowed conditions of both industrial claims in determining relator's residual functional capacity; and (2) the commission did not abuse its discretion in its analysis of the nonmedical factors.
 {¶ 26} Accordingly, as more fully explained below, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 {¶ 27} Turning to the first issue, relator argues that because the commission issued separate orders for each industrial claim, this court must find that the commission failed to consider what relator calls the "combined effect" of the allowed conditions of both claims. That is, relator seems to suggest that the issuance of separate orders for each claim is evidence of the commission's failure to consider all allowed conditions of the two claims together or in combination in determining the residual functional capacity. The magistrate disagrees.
 {¶ 28} Relator concedes that Dr. Stanko considered all the allowed conditions of both industrial claims in rendering his opinion as to relator's residual functional capacity. However, relator asserts that the commission itself failed to do so.
 {¶ 29} Clearly, because the commission relied upon Dr. Stanko's report in determining residual functional capacity, it necessarily considered all the allowed conditions of both industrial claims as did Dr. Stanko.
 {¶ 30} That the commission issued separate orders for each industrial claim where neither order lists all the allowed conditions of both industrial claims does not *Page 12 
create an inference or presumption that the commission failed to perform its duty to consider all the allowed conditions in both industrial claims together or in combination. See State ex rel. Johnson v. Indus.Comm. (1988), 40 Ohio St.3d 339 (the commission must consider all allowed conditions when determining PTD).
 {¶ 31} There is a presumption of regularity that attaches to commission proceedings. State ex rel. Lovell v. Indus. Comm. (1996),74 Ohio St.3d 250, 252. The issuance of separate orders does not rebut the presumption that the commission considered all the allowed conditions that Dr. Stanko considered in his relied upon report.
 {¶ 32} Turning to the second issue, the commission may credit offered vocational evidence, but expert opinion is not critical or even necessary because the commission is the expert on the nonmedical issues.State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266.
 {¶ 33} Here, notwithstanding that three vocational reports were submitted for consideration, the SHO did not cite to any of the vocational reports. Rather, the SHO engaged in his own analysis of the nonmedical factors. Clearly, it was within the SHO's discretion to render his own analysis of the nonmedical factors without specific reliance upon any of the three vocational reports. Jackson.
 {¶ 34} The SHO specifically relied upon Dr. Renneker in reaching a determination that relator's residual fine finger manipulation, medium dexterity and grasping constitute a "critical vocational asset." Relator does not challenge that finding here.
 {¶ 35} The SHO's order addresses relator's age, education, and work history.
 {¶ 36} The SHO found that relator's age of 72 years is a "vocational detractor." *Page 13 
 {¶ 37} Regarding education, the SHO noted that relator has completed a high school education, and that he reports himself to be fully literate.
 {¶ 38} Regarding work history, the SHO noted that relator was a career millwright in the farm equipment and truck manufacturing industry and this was semi-skilled work.
 {¶ 39} The SHO recognized that the "lifetime" skills relator used as a millwright are likely not readily transferable. The SHO, nevertheless, concluded that "his thirty years as a millwright demonstrate transferable aptitudes which one with a completed education, full literacy, and dominant upper extremity dexterity should be expected to be able to apply to the sedentary work for which Robin G. Stanko, M.D., finds the injured worker capable."
 {¶ 40} Relator contends that the commission's order fails to comply with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203. According to relator, the order merely "lists" some nonmedical factors and then concludes that relator should be expected to obtain the sedentary employment that Dr. Stanko finds he can perform. The magistrate disagrees.
 {¶ 41} In the magistrate's view, the commission's order complies withNoll.
 {¶ 42} Analysis here begins with relator's educational status. The commission has traditionally viewed a high school education as an asset to reemployment. State ex rel. Ellis v. McGraw Edison Co. (1993),66 Ohio St.3d 92; State ex rel. Murray v. Mosler Safe Co. (1993),67 Ohio St.3d 330. In fact, the commission's own rules so provide. Ohio Adm. Code4121-3-34(B)(3)(b)(iv) states:
 "High school education or above" means twelfth grade level or above. The G.E.D. is equivalent to high school education. High school education or above means ability in reasoning, arithmetic, and language skills acquired through formal schooling at twelfth grade education or above. Generally an individual with these educational abilities can perform semi skilled through skilled work. *Page 14 
 {¶ 43} Besides his high school education, relator's own self-evaluation on his PTD application indicates that he feels that he has the ability to read, write, and perform basic math. Thus, the SHO noted that relator reports himself to be fully literate. See State exrel. West v. Indus. Comm. (1996), 74 Ohio St.3d 354.
 {¶ 44} The commission need not explain in its order the significance of a high school education and relator's self-evaluation that he is fully literate. Clearly, these are assets to reemployment.
 {¶ 45} That the commission did not explain the significance of a high school education that produced a fully literate claimant does not detract in any way from the advantage that a high school education provides to an injured worker seeking reemployment.
 {¶ 46} While the SHO determined that relator's 30 year work history as a millwright did not produce readily transferable skills, he, nevertheless, felt that, because it was semi-skilled work, transferable aptitudes were demonstrated.
 {¶ 47} In State ex rel. Ewart v. Indus. Comm. (1996),76 Ohio St.3d 139, the court notes that the commission has the freedom to independently evaluate nonmedical factors because nonmedical factors are often subject to different interpretations. That is the case here.
 {¶ 48} While relator feels that his 30 year work history leaves him with no transferable skills, the commission viewed this semi-skilled work history as a vocational asset that can lead to reemployment. It was within the commission's discretion to so find. Ewart. *Page 15 
 {¶ 49} As previously noted, the SHO's order finds that relator's age of 72 years is a "vocational detractor." Relator argues that the commission's discussion of his age is insufficient. The magistrate disagrees.
 {¶ 50} In State ex rel. Rothkegel v. Westlake (2000),88 Ohio St.3d 409, the commission denied the PTD application of a 62 year old claimant who had sustained two industrial injuries while employed as a paramedic with a local fire department. In Rothkegel, the commission, through its SHO, simply acknowledged that the claimant was 62 years of age in its order denying the PTD application. The Rothkegel court states:
 Claimant also proposes that the commission's treatment of his age warrants a return of the cause for further consideration. The commission concedes that it mentioned claimant's age only in passing, but argues that the defect does not compel a return of the cause.
 Claimant relies on State ex rel. Moss v. Indus. Comm. (1996), 75 Ohio St.3d 414 * * *, in which we held:
 "[The commission has a] responsibility to affirmatively address the age factor. It is not enough for the commission just to acknowledge claimant's age. It must discuss age in conjunction with the other aspects of the claimant's individual profile that may lessen or magnify age's effects." Id. at 417[.]
 Since that time, we have declared that the absence of an age discussion is not necessarily a fatal flaw, nor does it, in some cases, even compel a return of the cause. In State ex rel. Blue v. Indus. Comm. (1997), 790 Ohio St.3d 466 * * * — relied on by both the commission and the court of appeals — we wrote:
 "As another Noll flaw, claimant assails the commission's cursory mention of his age. While the commission did not `discuss' this factor, that flaw, in this instance, should not be deemed fatal. Claimant was fifty-seven when permanent total disability compensation was denied. While not a vocational asset, claimant's age is also not an insurmountable barrier to re-employment. If claimant's other vocational factors were all negative, further consideration of his age would be appropriate, since age could be outcome-determinative — the last straw that could compel a different result. All of claimant's other vocational factors are, however, positive. A claimant may not be granted permanent total disability compensation due solely to his age. Therefore, even in the absence of detailed discussion on the effects of claimant's age, the commission's explanation satisfies Noll." Id. at 469-470[.] * * * *Page 16 
 Claimant responds that Blue did not overrule Moss and did not, therefore, eliminate the commission's responsibility to affirmatively discuss age. This is true, but claimant misses the point. The question is not whether the commission has such a duty, but rather what happens when the commission falls short of this duty. Blue indicates that where the claimant's other vocational factors are favorable, a return of the cause is not a given.
 In this case, claimant's other vocational factors are favorable. Like the claimant in Blue, our claimant is a high school graduate. Both claimants, moreover, received extensive additional schooling in highly demanding areas — Blue as a certified electrician and our claimant as a paramedic.
 Therefore, consistent with Blue, we decline to return the cause for further consideration[.] * * *
Id. at 411-412.
 {¶ 51} Rothkegel is instructive here. To begin, unlike the situation in Rothkegel, the commission here acknowledged that relator's age of 72 years is a "vocational detractor." Thus, unlike the situation inRothkegel, the commission has indicated in its order that it took into account the negative impact of relator's age in reaching its decision. *Page 17 
 {¶ 52} Moreover, much like the situation in Rothkegel, relator has a high school education which is a favorable factor and his work history was viewed by the commission favorably.
 {¶ 53} Thus, the favorable factors in relator's vocational profile can offset the negative effect of relator's age.
 {¶ 54} Based on the foregoing analysis, the magistrate finds that the commission's limited discussion of relator's age does not fatally flaw the commission's decision.
 {¶ 55} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
/s/ Kenneth W. Macke
 KENNETH W. MACKE MAGISTRATE *Page 1