[Cite as *State ex rel. Lee v. Indus. Comm.*, 2024-Ohio-4696.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [State ex rel.] Ruby D. Lee, | : | |
| Relator | : | |
| v. | : | No. 22AP-446 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on September 26, 2024

**On brief:** *Green Haines Sgambati Co.*, *L.P.A.*, *Shawn D. Scharf*, and *Richard T. Bush*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *John Smart*, for respondent Industrial Commission of Ohio.

**On brief:** *Taft Stettinius & Hollister LLP*, *Christopher B. Ermisch*, and *Jennifer Hahn Harrison*, for respondent New Delphi Automotive Systems, LLC.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LELAND, J.

{¶ 1} Relator, Ruby D. Lee, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied her request for permanent total disability ("PTD") compensation, and to enter an order granting the compensation.

**I. Facts and Procedural History**

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings

of fact and conclusions of law, which is appended hereto. Having independently reviewed the record and the magistrate's decision, we adopt the magistrate's findings of fact as our own.

{¶ 3} Of particular relevance here, the magistrate recounted the following facts. On May 18, 2011, relator injured herself while lifting a box at her place of employment with respondent New Delphi Automotive Systems, LLC ("Delphi"). Her workers' compensation claim for numerous injuries was allowed, and for years she received medical and psychiatric care. Relator declined to participate in vocational services, causing her vocational plan to close on January 23, 2013. By October 2019, relator was undergoing a work adjustment program when she suddenly and unexpectedly gained temporary custody of three of her grandchildren, the youngest of which was only one week old. On October 7, 2019, relator indicated she could not continue the work adjustment program due to the demands of caring for her grandchildren. Eventually, relator employed a babysitter and continued her vocational services on October 22, 2019. By the end of December 2019, however, relator had failed to comply with the job searches required to participate in vocational services. Accordingly, relator's rehabilitation file was closed due to non-compliance.

{¶ 4} On April 7, 2020, relator indicated she did not wish to participate in vocational rehabilitation. On April 8, 2020, the Ohio Bureau of Workers' Compensation ("BWC") denied relator's participation in vocational rehabilitation, finding relator's refusal to participate rendered any such rehabilitation unfeasible. On relator's appeal, a district hearing officer ("DHO") affirmed the BWC's findings on September 4, 2020. Relator did not appeal the DHO's order.

{¶ 5} After a doctor's report found relator to be permanently and totally disabled, relator filed an application for PTD compensation. After a hearing held before a staff hearing officer ("SHO") on September 28, 2021, the SHO denied relator's PTD compensation request. The SHO found "the ultimate impediment to the success of a job search was [relator's] refusal to participate in the job search." (Appended Mag.'s Decision at ¶ 33.) It also noted "although [relator] has been provided numerous opportunities for vocational rehabilitation * * * these attempts ultimately failed as a result of her unwillingness to pursue them to their logical conclusion by engaging in a job search." (Appended Mag.'s Decision at ¶ 33.)

{¶ 6}   On November 17, 2021, the commission refused relator's appeal of the SHO decision.  Then, on July 21, 2022, relator filed the present petition for a writ of mandamus.

{¶ 7}   The magistrate concluded there was "some evidence" to support the SHO's determination that relator failed to participate in vocational rehabilitation and her participation would not have been in vain.  In accordance with that determination, the magistrate recommends this court deny relator's request for a writ of mandamus.

{¶ 8}   Relator timely filed three objections to the magistrate's decision, and Delphi and the commission filed separate responses opposing relator's objections.

## II.  Objections

{¶ 9}   Relator filed the following objections:

> [I.] The Commission Abused its Discretion in Disqualifying Relator Lee from PTD Benefits for Failure to Complete Vocational Rehabilitation Where the Commission Previously Determined That Participation Would Be in Vain.
>
> [II.] The Commission Abused its Discretion by Failing to Properly Consider and Analyze the Physical, Psychological, and Non-medical Factors Which Combine to Establish That Relator Lee Is Incapable of Sustained Remunerative Employment.
>
> [III.] A Writ of Mandamus Should Be Issued Ordering the Industrial Commission to Find That Relator Lee Is Permanently, Totally Disabled.

## III.  Analysis

{¶ 10} In ruling on objections to a magistrate's decision, this court conducts an independent review to ensure the magistrate "properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). We "may adopt or reject a magistrate's decision in whole or in part, with or without modification."  Civ.R. 53(D)(4)(b).  In the present case, relator objects only to the magistrate's conclusions of law.

{¶ 11} The arguments raised in the objections are essentially identical to those already addressed by the magistrate.  The magistrate dealt with the first objection directly, finding the SHO's order to be supported by some evidence in the record.  As the magistrate established, relator must demonstrate by clear and convincing evidence that the commission abused its discretion by entering an order not supported by any evidence in the record. *State ex rel. WFAL Constr. v. Buehrer*, 144 Ohio St.3d 21, 2015-Ohio-2305,

¶ 12. Because we agree with the magistrate's conclusion that some evidence supported the SHO's order, relator is not entitled to a writ of mandamus. Accordingly, we overrule the first objection.

{¶ 12} The same goes for the second objection. The magistrate's decision fully and fairly addressed relator's argument that the commission failed to properly consider the factors that allegedly rendered relator incapable of sustained remunerative employment. Relator again failed to refute that the commission's decision was, in fact, supported by some evidence in the record. Accordingly, we overrule the second objection.

{¶ 13} The third objection is simply a request that we grant the petition and rule in relator's favor. Having overruled the first and second objections, we decline to grant relator's petition for a writ of mandamus. Accordingly, we overrule the third objection.

## IV. Conclusion

{¶ 14} Upon review of the magistrate's decision, an independent review of the record, and due consideration of relator's three objections, we find the magistrate has properly determined the facts and applied the appropriate law. We therefore overrule all three objections and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, we deny relator's request for a writ of mandamus.

*Objections overruled;*
*writ of mandamus denied.*

BEATTY BLUNT and JAMISON, JJ., concur.

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Ruby D. Lee, | : | |
| Relator, | : | |
| v. | : | No. 22AP-446 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on April 3, 2024

---

*Green Haines Sgambati Co., Shawn D. Scharf,* and *Richard T. Bush*, for relator.

*Dave Yost*, Attorney General, and *John Smart*, for respondent Industrial Commission of Ohio.

*Taft Stettinius & Hollister LLP, Christopher B. Ermisch,* and *Jennifer Hann Harrison*, for respondent New Delphi Automotive Systems, LLC.

---

IN MANDAMUS

{¶ 15} Relator, Ruby D. Lee ("claimant"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied her request for permanent total disability ("PTD") compensation, and to enter an order granting the compensation.

Findings of Fact:

{¶ 16} 1. On May 18, 2011, claimant sustained an industrial injury in the course of and arising out of her employment with respondent, New Delphi Automotive Systems LLC dba Delphi ("employer"), when she fell backward and struck a metal bar while lifting a box. Her workers' compensation claim was allowed for lumbar sprain; sacroiliac sprain; substantial aggravation of preexisting L5-S1 disc bulge with compression at the nerve root; substantial aggravation of preexisting L4-S1 narrowing of the neural foramina, L4-S1; depressive disorder; anxiety disorder; and radiculopathy lumbosacral region S1.

{¶ 17} 2. In the years following claimant's injury, claimant underwent significant medical care, including surgical consultations, physical therapy, chiropractic treatments, epidural injections, diagnostics, medicinal treatment, and psychological care.

{¶ 18} 3. Claimant declined vocational services, and her vocational plan closed on January 23, 2013. Claimant subsequently returned to work in 2013, but she went back off of work due to pain and last worked on June 24, 2014.

{¶ 19} 4. On July 10, 2019, Andrew Hospodar, D.C., completed a MEDCO-14, indicating claimant was a candidate for vocational rehabilitation and was capable of returning to work 40 hours per week, 8 hours per day, with restrictions. The employer could not accommodate these restrictions.

{¶ 20} 5. On January 2, 2020, the Ohio Bureau of Workers' Compensation ("BWC") issued a vocational rehabilitation closure report, effective December 23, 2019, which indicated the following: (1) the rehabilitation file was closed effective July 1, 2019, for lack of plan potential, as claimant remained off of work by the physician of record and modified duty could not be accommodated by the employer of record; (2) the rehabilitation file closure was rescinded because claimant obtained a new physician of record, Dr. Hospodar, who provided a work release with work restrictions in a July 10, 2019, MEDCO-14; (3) the employer of record was not able to accommodate the new work restrictions; (4) an unrelated medical condition interrupted a three-week situational work assessment program that began on July 29, 2019; (5) the situational work assessment program resumed on August 13, 2019, and a work adjustment program was incorporated into services; (6) on October 4, 2019, claimant unexpectedly gained temporary custody of her three grandchildren, one of them being one week old; (7) on October 7, 2019, claimant

indicated that the duration of her temporary custody was unknown, and she could not attend work adjustment due to the need to care for the baby, while the other two grandchildren were in school during the week; (8) on October 11, 2019, claimant indicated she could attend work conditioning because she found a babysitter; (9) claimant signed a participation agreement to continue in vocational services on October 22, 2019, and various services were continued; (10) on November 7, 2019, claimant was notified that job search with job placement/development would begin, including the submission and documentation of 15 job contacts per week, and she signed the form for these services for a four-week period on December 10, 2019; (11) for the December 16 to December 22, 2019, job-search report, claimant did not complete any job contacts because she forgot, and claimant protested that 15 job contacts per week was too much, as there were not even 15 places that she would be willing to work at in the area; (12) claimant was told that if 30 job contacts were not completed by the next week, a discussion would be held regarding the closure of the vocational file for noncompliance with job search; (13) claimant texted the employment specialist 90 minutes before her next meeting on December 23, 2019, and indicated she could not attend the meeting due to another engagement; (14) the employment specialist offered to reschedule the meeting for later in the day, but claimant indicated that she needed to go out of town and could not meet, although she offered no reason why she needed to go out of town; (15) the case manager texted and called claimant several times that morning telling her that the 30 job contacts needed to be submitted that day, and she was warned that closure of the file was possible, but claimant failed to respond; and (16) on December 24, 2019, claimant was notified of the rehabilitation file closure for noncompliance with job search.

{¶ 21} 6. On January 30, 2020, claimant filed a motion requesting temporary total disability ("TTD"), beginning on the date of the vocational rehabilitation closure. The TTD motion was accompanied by Dr. Hospodar's January 20, 2020, MEDCO-14, which provided work restrictions of 40 hours per week, 8 hours per day, and indicated claimant was a candidate for vocational rehabilitation. Dr. Hospodar's February 24, 2020, MEDCO-14 also indicated claimant was a candidate for vocational rehabilitation.

{¶ 22} 7. On March 10, 2020, the BWC granted claimant TTD compensation beginning December 23, 2019, which continued until maximum medical improvement ("MMI") was reached on March 2, 2021.

{¶ 23} 8. An April 7, 2020, a return to work screening tool managed care organization ("MCO") feasibility determination indicated that claimant stated on that date that she did not wish to participate in vocational rehabilitation.

{¶ 24} 9. On April 8, 2020, the BWC issued an order, in which it denied claimant's participation in vocational rehabilitation on the basis that claimant's refusal to participate rendered vocational rehabilitation unfeasible. Claimant appealed.

{¶ 25} 10. Dr. Hospodar's May 2020 MEDCO-14 provided for light-duty, sedentary restrictions and allowed for 40 work hours per week (8 hours per day) but indicated claimant was not a candidate for vocational rehabilitation.

{¶ 26} 11. The June 2020, MEDCO-14 completed by Douglas Muccio, Ph.D., indicated that claimant is not a candidate for vocational rehabilitation.

{¶ 27} 12. In a September 4, 2020, order, a District Hearing Officer ("DHO") affirmed the BWC's April 8, 2020, order and denied participation in vocational rehabilitation, finding the following: (1) vocational rehabilitation is denied due to non-feasibility, as claimant is not capable of returning to her former position of employment or finding employment in a different job at the present time; and (2) the DHO relies on Dr. Hospodar's May 2020 MEDCO-14, and Dr. Muccio's June 2020, MEDCO-14, both of which indicate that claimant is not an eligible candidate for vocational rehabilitation.

{¶ 28} 13. Dr. Muccio's January 22, 2021, report indicated the following: (1) the link between claimant's psychological status and her chronic physical injury creates a poor prognosis for her employment status; (2) the degree of permanent impairment attributable to the psychiatric conditions is 35 percent; and (3) due to the impairments, claimant would not be able to participate in any sustainable, remunerative employment; therefore she is permanently and totally disabled.

{¶ 29} 14. On February 8, 2021, claimant filed an application for PTD compensation. In the application, claimant reported that she has her G.E.D., she can read, she can write, she can do basic math, and she has minimal basic computer skills.

{¶ 30} 15. In the June 17, 2021, report of Dennis Glazer, M.D., Dr. Glazer found the following: (1) claimant has reached MMI for the allowed physical conditions; (2) claimant as an 8 percent whole-person impairment, as there were complaints of radicular pain without objective findings upon examination and no alteration of the structural integrity; and (3) claimant is capable of light work.

{¶ 31} 16. In the July 6, 2021, report of Jeffrey Rindsberg, PsyD, ABPP, Dr. Rindsberg found the following: (1) claimant has reached MMI; (2) claimant's symptoms continue despite psychotherapy for several years; (3) there is not an expectation of fundamental functional psychological change; (4) claimant's whole persona impairment was mild at 25 percent; (5) claimant is not permanently and totally impaired due to her allowed psychological conditions; (6) claimant can work a parttime job four hours per day, five days per week; (7) claimant can do simple tasks; (8) claimant can interact with others in a work setting; (9) claimant would do better when instructed what to do, as opposed to taking initiative; (10) long-term, complicated projects may present a challenge for her; and (11) claimant should work in quiet environments in which there is not a lot of stress.

{¶ 32} 17. In the August 25, 2021, vocational evaluation conducted by Amy Foster, M.Ed. CRC, Ms. Foster found the following: (1) claimant displays insufficient worker traits to qualify for gainful employment; (2) claimant is limited to light work activities; (3) at both the light as well as sedentary physical demand levels, claimant presents with neither marketable nor transferable skills given her past relevant work history and current demonstrated skill levels; (4) claimant presents with substantial educational deficits that would preclude successful efforts in higher level academic and skill-training programs; (5) test results suggest that claimant will have difficulty sustaining herself with repetitive use of her upper extremities that would negatively impact bimanual work speed and production; and (6) claimant would not be capable of engaging in any and all forms of sustained remunerative employment.

{¶ 33} 18. On September 28, 2021, a hearing was held before a staff hearing officer ("SHO"). In an October 5, 2021, order, the SHO denied claimant's request for PTD compensation and found the following: (1) claimant retains the physical and psychological functional capacity to engage in some employment; (2) the January 20, 2020, vocational rehabilitation closure report provides a history of attempts to get claimant to engage in a

job search; (3) the January 20, 2020, report from Dr. Hospodar indicates that claimant is a candidate for vocational rehabilitation; (4) claimant was contacted on April 7, 2020, to discuss reentry into the vocational rehabilitation program, but she declined to participate; thus, the administrator issued an April 8, 2020, decision denying reentry into the vocational program on the basis that claimant's refusal to participate rendered vocational rehabilitation unfeasible; (5) the DHO's September 4, 2020, decision affirmed the administrator's decision, adding that, at the time of the hearing, the treating chiropractor and psychologist were not supporting claimant's participation in vocational rehabilitation; (6) claimant did not appeal the DHO's September 4, 2020, decision; (7) Dr. Glazer found in his June 10, 2021, report that claimant was capable of light work; (8) Dr. Rindsberg found in his June 18, 2021, report that claimant can work a parttime job for four hours per day, five days per week, doing simple tasks in a quiet environment; (9) based upon the reports from Drs. Glazer and Rindsberg, all of the conditions in the claim have achieved MMI but prevent a return to work without the imposition of permanent restrictions; (10) claimant's age is a positive vocational factor in returning to work; (11) claimant's education is a positive vocational factor in returning to some type of employment; (12) claimant's work experience is a positive factor in returning to the workforce in a capacity consistent with her restrictions; (13) several attempts were made to return claimant to alternate employment; (13) training provided claimant with resources to begin a job search; (14) the ultimate impediment to the success of a job search was claimant's refusal to participate in the job search; (15) when presented with the task of performing 15 job searches, claimant responded that there were not even 15 places she was willing to work in her area; (16) claimant made no mention of her pain or emotional impairment preventing her from engaging in a job search; rather, her refusal was based on her dissatisfaction with the occupational choices presented to her; (17) claimant refused the offer to reengage with vocational rehabilitation in April 2021, despite that the treating chiropractor had opined that she was a viable candidate for these services; (18) claimant was awarded social security disability benefits commencing on June 1, 2013, which can act as a disincentive for reentry into the job market and is supported in this case based upon claimant's statements; (19) although claimant has been provided numerous opportunities for vocational rehabilitation and updated training to enhance her wide-ranging occupational experience, these attempts

ultimately failed as a result of her unwillingness to pursue them to their logical conclusion by engaging in a job search; (20) claimant's occupational work history reveals that she held many positions that would be consistent with or, at a minimum, provide the transferrable skills for engaging in employment consistent with the restrictions imposed by Drs. Glazer and Rindsberg; (21) claimant's extensive work experience in the retail industry, in the financial-services field, as a receptionist in an attorney's office, as a telemarketer, as a keyholder for a pizza restaurant, as a kitchen staff at a hospital, and as a parts inspector reveals several positions that would reasonably be consistent with the restrictions imposed by Drs. Glazer and Rindsberg; (22) claimant has spent many hours training in vocational rehabilitation to update her skills; (23) claimant's refusal to put this occupational experience and training to use to engage in a job search for suitable employment has prevented a return to the workforce; and (24) the preponderance of the evidence fails to support the contention that the conditions recognized in the claim are preventing claimant from engaging in sustained remunerative employment.          . Claimant appealed.

{¶ 34}  19. On November 17, 2021, the commission refused claimant's appeal.

{¶ 35}  20. On July 21, 2022, claimant filed a petition for writ of mandamus, requesting that this court vacate the commission's order that denied claimant PTD compensation, and to enter an order granting the compensation.

Conclusions of Law and Discussion:

{¶ 36}  The magistrate recommends that this court deny claimant's request for a writ of mandamus.

{¶ 37}  In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). In matters before it, the commission is the exclusive evaluator of the weight and credibility of the evidence. *State ex rel. LTV Steel Co. v. Indus. Comm.*, 88 Ohio St.3d 284, 287 (2000). Therefore, to be entitled to an extraordinary remedy in mandamus, the relator must demonstrate, by clear and convincing evidence, that the commission abused its discretion by entering an order not supported by any evidence in the record. *State ex rel. WFAL Constr. v. Buehrer*, 144 Ohio St.3d 21, 2015-Ohio-2305, ¶ 12.

{¶ 38} The Supreme Court of Ohio has outlined the proper analysis in considering a PTD compensation application, as follows:

> The relevant inquiry in determining permanent total disability is whether the claimant is able to perform sustained remunerative employment. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 170, 31 Ohio B. 369, 509 N.E.2d 946 (1987). In addition to the medical evidence, the commission must analyze nonmedical factors such as the claimant's age, education, and work record. The commission must also consider any other factors that might be important to the determination whether a claimant may return to the job market by using past employment skills or skills that may be reasonably developed. *Id.*

{¶ 39} R.C. 4123.58(D) provides, in pertinent part:

> (D) Permanent total disability shall not be compensated when the reason the employee is unable to engage in sustained remunerative employment is due to any of the following reasons, whether individually or in combination:
>
> * * *
>
> (4) The employee has not engaged in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain.

{¶ 40} The Supreme Court of Ohio discussed vocational rehabilitation efforts in *State ex rel. Wilson v. Indus. Comm.*, 80 Ohio St.3d 250, 253-54 (1997), explaining:

> We view permanent total disability compensation as compensation of last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed. Thus, it is not unreasonable to expect a claimant to participate in return-to-work efforts to the best of his or her abilities or to take the initiative to improve re-employment potential. While extenuating circumstances can excuse a claimant's nonparticipation in reeducation or retraining efforts, claimants should no longer assume that a participatory role, or lack thereof, will go unscrutinized.

{¶ 41} The commission is not required to accept vocational evidence, and it has the discretion to accept or reject vocational evidence. *State ex rel. Lacroix v. Indus. Comm.*, 144 Ohio St.3d 17, 2015-Ohio-2313. The commission has authority to reject a vocational

report, even if it is uncontradicted. *State ex rel. Singleton v. Indus. Comm.*, 71 Ohio St.3d 117 (1994). The commission may credit offered vocational evidence, but expert opinion is not critical or even necessary, because the commission is the expert on vocational evidence. *State ex rel. Jackson v. Indus. Comm.*, 79 Ohio St.3d 266, 270-71 (1997). The commission is also not required to explain why certain evidence was deemed unpersuasive. *State ex rel. Giant Eagle, Inc. v. Indus. Comm.*, 10th Dist. No. 18AP-216, 2019-Ohio-2135, ¶ 22. The commission needs only to enumerate the evidence it relied upon to reach its decision and does not need to list or cite all evidence that has been considered and rejected. *State ex rel. Mitchell v. Robbins & Myers, Inc.*, 6 Ohio St.3d 481 (1983); *State ex rel. Fultz v. Indus. Comm.*, 69 Ohio St.3d 327 (1994). Although the commission may accept the BWC's findings of a worker being declared non-feasible for vocational rehabilitation, it is nevertheless the commission's responsibility to ultimately decide issues of a worker's potential to be rehabilitated. *State ex rel. Gibbs v. Thistledown, Inc.*, 10th Dist. No. 13AP-487, 2014-Ohio-2731, ¶ 16 (magistrate's decision), citing *State ex rel. Rodriguez v. Indus. Comm.*, 67 Ohio St.3d 210 (1993).

{¶ 42} In the present case, claimant first argues that the commission abused its discretion when it denied claimant PTD compensation based upon her failure to complete vocational rehabilitation when the commission previously determined that participation in vocational rehabilitation would be in vain. Claimant initially asserts that whatever relevance the December 23, 2019, closing had was mooted by the BWC's March 10, 2020, order that found claimant had not reached MMI and placed her back on TTD retroactive to December 23, 2019. Claimant also asserts that she is not required to pursue futile efforts at vocational rehabilitation; the DHO order of September 4, 2020, unequivocally established that claimant was not a feasible candidate for vocational rehabilitation due to her allowed conditions; and there was no reasonable probability that claimant would benefit and return to work. Claimant contends that the September 4, 2020, DHO order supplanted the commission's April 8, 2020, determination regarding refusal to participate in the job-search portion of vocational rehabilitation. Claimant claims that this determination of unfeasibility moots the issue of refusal to participate because such refusal cannot logically be the cause of the disability and because participation would necessarily be in vain under R.C. 4123.58(D).

{¶ 43} The SHO concluded that claimant failed to participate in vocational rehabilitation and her participation would not have been in vain. The magistrate finds there was some evidence to support this determination. The SHO's October 5, 2021, order thoroughly reviewed the vocational evidence and found that claimant's vocational rehabilitation failed because she refused to engage in a job search. As explained in the findings of fact above, when claimant was initially asked to perform 15 job searches to begin the job-search phase of her vocational rehabilitation, claimant responded that there were not even 15 places she was willing to work in her area. Claimant never gave any justifiable reason for refusing to engage in a job search, and did not indicate her allowed conditions prevented such. The SHO concluded that claimant's refusal to put her occupational experience and training to use to engage in a job search for suitable employment prevented a return to the workforce.

{¶ 44} Claimant asserts that the December 23, 2019, closure report was mooted by the BWC's March 10, 2020, order that found claimant had not reached MMI and placed her back on TTD retroactive to December 23, 2019; however, Dr. Hospodar's January 20, 2020, MEDCO-14 submitted with her TTD-compensation request indicated that claimant was a candidate for vocational rehabilitation. As for the September 4, 2020, order, it affirmed the BWC's April 8, 2020, order, which denied vocational rehabilitation due to the failure to participate. The day before, on April 7, 2020, the MCO forwarded a return to work screening tool MCO feasibility determination to the BWC that indicated claimant expressed she did not wish to participate in vocational rehabilitation again. Although in the September 4, 2020, order, the DHO relied upon Dr. Hospodar's May 2020 and Dr. Muccio's June 2020 MEDCO-14 forms and noted that both indicated claimant is not an eligible candidate for vocational rehabilitation, the forms did not explain why she was not eligible, which is especially relevant because Dr. Hospodar's January 20 and February 24, 2020, MEDCO-14s indicated claimant was a candidate for vocational rehabilitation. Regardless, as the SHO explained, the DHO affirmed the April 8, 2020, order that was based on nonparticipation in vocational rehabilitation and did not modify or reverse the order or the prior finding of non-feasibility due to lack of participation in a job search. As this court explained in *Gibbs*, a closure report documenting the refusal "to participate in vocational services without providing extenuating circumstances to justify * * * non-

participation, * * * constitutes some evidence establishing that relator unjustifiably refused to participate in vocational rehabilitation[,]" and "one unjustified refusal of vocational rehabilitation services is sufficient to establish some evidence that relator unjustifiably refused vocational rehabilitation." 2014-Ohio-2731, at ¶ 10-11. For the above reasons, in the present case, the magistrate finds there existed some evidence to support the SHO's conclusion that claimant's refusal to participate in vocational rehabilitation services supported the denial of claimant's request for PTD compensation.

{¶ 45} Claimant next argues that the commission abused its discretion when it failed to properly consider and analyze the physical, psychological, and non-medical factors that combine to establish that relator is incapable of sustained remunerative employment. Claimant raises the following arguments in support: (1) the commission merely recited claimant's past jobs without explaining how her occupational history enhances her reemployment potential; (2) the commission failed to identify any transferable skills; failed to explain how Dr. Glazer's observations that she needs help with laundry, has to lean on a shopping cart to shop, and is limited to only occasional bending or stooping permit her to perform sustained, remunerative, light-duty work; (3) the commission's conclusion—that at age 63, claimant has a minimum of two years until retirement age to obtain additional skills to transition to alternative employment within her restrictions—fails to identify any such skills or alternative employment; and (4) the commission failed to explain how claimant's acquisition of a G.E.D. 46 years ago is a positive factor, given she reads on a second-grade level, has a fifth-grade math level, has no keyboarding or computer skills, and can only perform simple tasks in a quiet environment without stress.

{¶ 46} Because the standard of review in commission mandamus cases is whether some evidence exists in the record to support the commission's determination, the analysis of the commission's order must start there. Relying upon the June 2021 reports of Drs. Glazer and Rindsberg, which generally found claimant was capable of light, part-time work, doing simple tasks in a quiet environment, the SHO found that claimant retains the physical and psychological functional capacity to engage in some employment. However, the conditions in the claim prevented a return to work without the imposition of permanent restrictions, so the SHO then evaluated claimant's non-medical disability factors. Although claimant criticizes the SHO's findings regarding the non-medical disability factors, the SHO

completed a thorough analysis. With regard to work history, claimant asserts that the SHO merely recited her past jobs without explaining how her occupational history enhances her reemployment potential. However, the SHO did not merely recite her past jobs. Instead, the SHO described claimant's work duties for the prior positions and then endeavored to list which of the past jobs demonstrated claimant's ability to ably operate in a semi-skilled capacity, and which of the past jobs were less physically demanding. The SHO noted that these less physically demanding jobs still provided transferrable skills to help claimant transition to the less physically demanding and stressful positions recommended by Drs. Glazer and Rindsberg. Although claimant argues that the SHO failed to explain how Dr. Glazer's observations that she needs help with laundry, has to lean on a shopping cart to shop, and is limited to only occasional bending or stooping permit her to perform sustained, remunerative, light-duty work, Dr. Glazer himself found in his June 17, 2021, report that claimant is capable of light work. Furthermore, a lack of transferable skills does not mandate a PTD award. *State ex rel. Ewart v. Indus. Comm.*, 76 Ohio St.3d 139, 142 (1996). Thus, even if it can be argued that the commission's order fails to identify even one transferable skill, that would not be fatal to upholding the order. *Id.* The magistrate finds the SHO sufficiently described and explained claimant's work history.

{¶ 47} Claimant also argues that the commission's conclusion that, at age 63, claimant has a minimum of two years until retirement age to obtain additional skills to transition to alternative employment within her restrictions fails to identify any such skills or alternative employment. To be sure, the SHO's analysis of this factor is brief, and provides limited insight. However, how age affects a claimant's ability to work is logically connected to the analysis of the other factors. If an injured worker otherwise has positive non-medical factors and a strong work history, the advancing age of the worker becomes less of an obstacle to employment. Although the commission should endeavor to explain how the effect of a claimant's advancing age is diminished by the claimant's other traits, skills, and characteristics, given the otherwise thorough analysis of the non-medical factors in the present case, the magistrate finds that the SHO's discussion of age and the conclusion that it is a positive factor is sufficient. *See State ex rel. Chapman v. Indus. Comm.*, 10th Dist. No. 07AP-1070, 2008-Ohio-4717, ¶ 20 (although the commission in this case acknowledged that relator was approaching retirement age because he was 62 years old,

the commission found that relator possessed characteristics that diminished the effect of relator's age, such as relator's ability to learn new tasks when shown or told how to perform certain functions despite an inability to read or write, relator's intelligence, and relator's very positive work history). *See also State ex rel. Blue v. Indus. Comm.*, 79 Ohio St.3d 466, 469-70 (1997) (the commission's cursory mention of age was not fatal when other vocational factors are favorable because an injured worker cannot be granted PTD compensation due solely to his age). Therefore, the magistrate finds the SHO's discussion of claimant's age was sufficient here.

{¶ 48} Claimant next argues that the commission failed to explain how claimant's acquisition of a G.E.D. 46 years ago is a positive factor, given she reads on a second-grade level, has a fifth-grade math level, has no keyboarding or computer skills, and can only perform simple tasks in a quiet environment without stress. However, claimant's attainment of a G.E.D., though remote in time, is considered the equivalent of a high school education pursuant to Ohio Adm.Code 4121-3-34(B)(3)(b)(iv), which provides the following:

> (iv) "High school education or above" means twelfth grade level or above. The G.E.D. is equivalent to high school education. High school education or above means ability in reasoning, arithmetic, and language skills acquired through formal schooling at twelfth grade education or above. Generally an individual with these educational abilities can perform semi-skilled through skilled work.

Ohio Adm.Code 4121-3-34(B)(3)(b)(iv) reinforces the commission's traditional view that a high school education as an asset to reemployment. *State ex rel. Thompson v. Indus. Comm.*, 10th Dist. No. 06AP-229, 2007-Ohio-698, ¶ 42.

{¶ 49} Furthermore, in her application, claimant self-reported that she can read and write, she has minimal computer skills, she can do basic math, and her past work history required her to read instructions for phone services. This evidence supports the SHO's finding on this factor. *See Thompson* at ¶ 43 (the relator's own self-evaluation on his PTD application indicates that he feels that he has the ability to read, write, and perform basic math; thus, the SHO noted that relator reports himself to be fully literate). The commission need not explain in its order the significance of a high school education and a claimant's self-evaluation in a PTD application that the claimant is fully literate, as these are clearly

assets to reemployment. *Id.* ¶ 44. Here, the magistrate finds some evidence supports the SHO's conclusion that claimant's education is a positive factor. Therefore, there was some evidence to support the commission's determination of the non-medical disability factors, and claimant's arguments are without merit.

{¶ 50} Accordingly, it is the magistrate's recommendation that this court should deny claimant's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.